784 A.2d 1244

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. VIOLET BROWN, DEFENDANT–APPELLANT.

Argued April 30, 2001—Decided December 3, 2001.

140

*Kevin G. Byrnes*, Designated Counsel, argued the cause for appellant (*Peter A. Garcia*, Acting Public Defender, attorney).

*Dorothy A. Hersh*, Assistant Prosecutor, argued the cause for respondent (*Daniel G. Giaquinto*, Mercer County Prosecutor, attorney).

*Jafer Aftab*, Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*John J. Farmer, Jr.*, Attorney General, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

Defendant appeals her conviction, under *N.J.S.A.* 2C:35–7, of third-degree possession of marijuana with intent to distribute in a school zone. This appeal raises two issues: whether a confidential informant's statements to the police should have been admitted as declarations against interest, and whether defendant was entitled to a severed trial based on *Rule* 3:15–2. The trial court ruled against defendant on both issues and the Appellate Division affirmed. We agree and affirm.

I.

On July 27, 1994, a confidential police informant told Officer Maurice Crosby, of the Trenton Police Department's Vice Enforcement Unit, that "Sharon Spence and Violet Tomlinson are selling large quantities of Marijuana from their Second Floor Apartment at 154 Hamilton Avenue." During the week of July 24, 1994 the informant cooperated with the Trenton police to carry out the first of two controlled buys of marijuana from Spence. On August 1, 1994 the informant advised Officer Crosby that "Sharon Spence and Violet Tomlinson are continuing to sell Marijuana from their Second Floor Apartment at 154 Hamilton Avenue." In addition, the informant reported that "the two (2) women have started selling Crack Cocaine and powder Cocaine from the residence." The informant made a second controlled buy of marijuana from Spence during the week of July 31, 1994.

On August 4, 1994 Officer Crosby obtained a search warrant for Spence and Tomlinson's apartment. In his affidavit for the search warrant, Crosby stated that the confidential informant was reliable, noting that the informant had provided information in the past that led to fifteen arrests. When the search warrant was executed on August 5, 1994 at about 5:48 a.m., defendant and co-defendant Spence were present in their respective second- and third-floor bedrooms. The kitchen was located on the second floor. The following quantities of CDS were recovered: 18.97 grams of cocaine in the freezer section of the refrigerator; 3.41 grams of marijuana in the kitchen pantry; 100.48 grams of marijuana in defendant's second-floor bedroom; 1.55 grams of marijuana on top of a chest of drawers in Spence's third-floor bedroom; and 1.89 grams of marijuana from the chest of drawers in Spence's third-floor bedroom. In addition, a film canister with several partially smoked marijuana cigarettes was found on the headboard of the bed in defendant's bedroom, as well as a pack of rolling papers, a cigarette lighter, a plastic sandwich bag, and some loose vegetation located in the lid of a box elsewhere in defendant's bedroom. In addition to the CDS, the police also

found a passport issued to Violet Melrose Tomlinson and a Social Security card in the name of Violet Melrose Brown in a purse found in the second-floor bedroom. Several other personal items belonging to Brown were also found in her bedroom. A digital scale, without batteries or a back, was found on the floor outside of Spence's third-floor bedroom. A box of razor blades and numerous plastic ziplock bags were seized from under the sink in the bathroom on the second floor.

Defendant and Spence were indicted on seven counts of drug offenses related to all of the CDS, under an accomplice liability theory. Pre-trial motions to disclose the identity of the confidential informant and to sever the trial were denied.

Defendant testified at trial and denied involvement with, or knowledge of, any of the drugs found in the apartment. She testified that although her bedroom was located on the second floor, she worked as a housekeeper and babysitter in Princeton and was rarely at the apartment other than to sleep two or three nights per week. Defendant claimed that she kept nothing in the chest of drawers located in her second-floor bedroom and that, in fact, she had never touched that chest of drawers. She also explained that she did not use the kitchen, including the refrigerator, because she ate her meals at her job and returned home late at night. Defendant testified that she never ventured up to the third floor. She stated that there was no lock on her bedroom door and that she did not know whether others had access to her room because she was rarely at the apartment.[1]

Spence testified that at least some of the 3.44 grams of marijuana recovered from her third-floor bedroom was possessed by her for her personal use. She denied, however, knowledge of the marijuana or cocaine found in other locations in the apartment. She explained that the digital scale found on the third floor was inoperable, but that she kept it because her young children liked

---

[1] In contrast to her trial testimony, defendant informed the trial court at her sentencing hearing that "I am guilty of the weed in my room."

to play with it. In an attempt to justify the presence of other CDS found in the apartment, she suggested that unknown third persons placed it there. She testified that the apartment had a fire escape that was connected to several other row houses and that she had observed drug activity in the neighborhood around her apartment.

During the trial, defendant sought to impeach Spence's credibility by introducing the informant's statements that he or she had made two controlled marijuana purchases from Spence. The trial court determined that the informant's statements were inadmissible hearsay because they did not satisfy any of the exceptions to the hearsay rule.

The jury convicted defendant of the four marijuana charges: fourth-degree possession of marijuana; third-degree possession of marijuana with intent to distribute; third-degree possession of marijuana with intent to distribute in a school zone; and fourth-degree maintaining a premises for persons using controlled dangerous substances. Defendant was acquitted of all three charges related to the cocaine found in the refrigerator. The jury convicted Spence on all seven counts. After proper merger of offenses, defendant was sentenced to a custodial term of three years to be served without parole eligibility. The Appellate Division affirmed defendant's judgment of conviction in an unpublished opinion. We granted defendant's petition for certification, 165 *N.J.* 604, 762 *A.*2d 218 (2000), limited to the issues of the admissibility of testimony regarding the informant's statements to the police and the denial of the severance motion.

II.

A.

Defendant argues that she should have been allowed to cross-examine the testifying police officer about his conversations with the confidential informant because some of the informant's statements fall under the "statement against interest" exception to

hearsay. Defendant sought to place before the jury the fact that, although the informant's statements to Officer Crosby regarding the drug activity at the apartment implicated both defendant and Spence, the two statements regarding the controlled drug buys indicated that only Spence had sold drugs to the informant. Defendant contended that those two statements exculpated her from any involvement in the drug sales. As noted previously, the trial court disallowed the statements, concluding that they were inadmissible hearsay.

In her appeal to the Appellate Division and before us, defendant contends that the informant's statements were contrary to the informant's penal and social interests because they were admissions that the informant had purchased marijuana. The Appellate Division rejected defendant's argument, explaining:

> The informant was not subjecting himself to criminal liability at the time of the statement because he was an informant working for the government. The "test is whether the statement so far exposes the declarant to criminal liability that 'but for [its] truth [it] would not have been made.'" *State v. Gomez*, 246 *N.J.Super.* 209, 215, 587 *A.*2d 272 (App.Div.1991) (citations omitted). The informant knew at the time he made the statement that it was not against his interest to do so. Furthermore, as the rule requires, the statement is admissible against an accused only if the accused was the declarant. Thus, this exception is inapplicable because the declarant is not the accused.

As a preliminary matter, a trial court's evidentiary rulings are "entitled to deference absent a showing of an abuse of discretion, *i.e.*, there has been a clear error of judgment." *State v. Marrero*, 148 *N.J.* 469, 484, 691 *A.*2d 293 (1997). Under that standard, an appellate court should not substitute its own judgment for that of the trial court, unless "the trial court's ruling 'was so wide of the mark that a manifest denial of justice resulted.'" *Ibid.* (quoting *State v. Kelly*, 97 *N.J.* 178, 216, 478 *A.*2d 364 (1984)).

We first address the State's assertion that the informant's statements are not relevant. The fact that defendant and Spence were not charged based on the drugs sold by Spence to the informant is not dispositive of the relevancy question. Relevant evidence is defined as "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination

of the action." *N.J.R.E.* 401. That Spence was the person who twice sold marijuana to the informant is relevant to show that the CDS recovered during the execution of the search warrant probably belonged to Spence and that she probably was a drug dealer. But that evidence does not prove that Brown was not in sole or joint possession of the marijuana recovered from her bedroom; nor does it prove that she was not involved in selling drugs. That evidence can, however, support her claim that she was unaware of the presence of CDS in her bedroom. Nevertheless, relevance is not an exception to the hearsay rule.

■ The trial court properly ruled that the confidential police informant's identity should not be revealed. *See N.J.R.E.* 516; *State v. Florez*, 134 *N.J.* 570, 578–79, 636 *A.*2d 1040 (1994). Thus, any statements made by the informant, if admitted at all, would be introduced through Officer Crosby's testimony as reflected in his affidavit submitted in support of his application for the search warrant. Those two statements are hearsay because each "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *N.J.R.E.* 801(c); *see State v. Smith*, 155 *N.J.* 83, 95, 713 *A.*2d 1033 (1998) (stating that "the information contained in an informant's tip is hearsay."). Thus, the statements are not admissible except as provided by the New Jersey Rules of Evidence. Defendant asserts that the two statements by the confidential informant were declarations against the informant's penal and social interests. Under our rules of evidence, a declaration against interest is a

> statement which was at the time of its making so far contrary to the declarant's pecuniary, proprietary, or social interest, or so far tended to subject declarant to civil or criminal liability, or to render invalid declarant's claim against another, that a reasonable person in declarant's position would not have made the statement unless the person believed it to be true. Such a statement is admissible against an accused in a criminal action only if the accused was the declarant.
>
> [*N.J.R.E.* 803(c)(25).]

■ That exception "is based on the theory that, by human nature, individuals will neither assert, concede, nor admit to facts

that would affect them unfavorably." *State v. White,* 158 *N.J.* 230, 238, 729 *A.*2d 31 (1999). Thus, "statements that so disserve the declarant are deemed inherently trustworthy and reliable." *Ibid.* Consequently, "[t]he law of evidence recognizes that a statement in which a party confesses to having committed a crime subjects the declarant to criminal liability, and therefore constitutes a statement that is against interest." *Ibid.* "Whether a statement is in fact against [the defendant's] interest must be determined from the circumstances of each case." *Williamson v. United States,* 512 *U.S.* 594, 601, 114 *S.Ct.* 2431, 2436, 129 *L.Ed.*2d 476, 482 (1994). Further, the statement must have been against the declarant's interest at the time it was made. *State v. Norman,* 151 *N.J.* 5, 31, 697 *A.*2d 511 (1997).

We are persuaded that the informant's statements do not meet the requirements of *N.J.R.E.* 803(c)(25). The informant involved here was a police informant rather than a citizen informant. As such, he or she was an investigating agent of the police. It has long been recognized "that the government may employ undercover tactics to infiltrate criminal ranks and may rely on paid informants in order to locate and arrest criminals." *United States v. McQuin,* 612 *F.*2d 1193, 1195–96 (9th Cir.), *cert. denied,* 445 *U.S.* 955, 100 *S.Ct.* 1608, 63 *L.Ed.*2d 791 (1980); *accord State v. Oliver,* 50 *N.J.* 39, 42, 231 *A.*2d 805 (1967). Protecting the identity of informants is a privilege afforded the State in recognition of its compelling need to protect its sources of information concerning criminal activity. *Roviaro v. United States,* 353 *U.S.* 53, 59, 77 *S.Ct.* 623, 627, 1 *L.Ed.*2d 639, 644 (1957). The two controlled drug buys made by the informant in this case were negotiated and supervised by law enforcement authorities, with the informant participating as an agent of the State. *See State v. Florez, supra,* 134 *N.J.* at 582, 636 *A.*2d 1040. Because he or she was working on behalf of the Trenton police at the time he or she made the buys, the informant's statements concerning what occurred during those buys were not against his or her penal interest. The informant's statements about the identity of Spence

as the seller were the expected result of his or her role as a controlled buyer, thereby essentially conferring immunity upon the informant.

■ Defendant maintains that the informant did not know at the time he or she made the statements that it was not against his or her interest to do so. She states that one cannot trust law enforcement not to file charges against an individual who aids a police investigation. Those contentions, even assuming they might be true for the general public, do not apply to the informant in this case as a matter of fact. In his affidavit, Officer Crosby informed the judge who issued the search warrant that the informant was reliable as he or she had "provided information in the past which has resulted in the arrests of fifteen (15) persons for Dangerous Drug Offenses, one (1) of whom has been convicted and the remainder are pending court action."

Thus, the informant's past working relationship with Officer Crosby negates defendant's implication that the informant's participation in the controlled buys could have led to his or her arrest. Notwithstanding the informant's investigatory role, he or she probably would not have assisted the State in its drug investigation by making two controlled buys unless the informant knew that he or she was immune from prosecution and that his or her anonymity would be preserved. Moreover, Officer Crosby and the Trenton police would not want to run the risk of losing the informant's cooperation by needlessly charging drug offenses against an informant who acted as their agent when the informant engaged in a controlled buy. Therefore, the informant's statements are not admissible under the declaration-against-interest exception to the hearsay rule.

Defendant's reliance on *State v. White, supra,* 158 *N.J.* at 230, 729 *A.*2d 31, to support her assertion that the informant's statements are admissible under *N.J.R.E.* 803(c)(25) because they inculpate the declarant while also exculpating her is misplaced. In *White,* the declarant had given a statement to the police that implicated himself and exculpated the defendant in a robbery.

Only a portion of that statement was admitted, including the declarant's bragging to the defendant about his involvement in the robbery. *Id.* at 245, 729 *A*.2d 31. Such an admission directly inculpates the declarant. It also indirectly exculpates the defendant; if the declarant bragged to the defendant about the robbery, "one may infer that [the defendant] did not participate in the crime." *Ibid.*

Here, unlike in *White*, the informant's statements are not admissible as a declaration against interest. Within the context of his or her investigatory role, the informant's statements in the present case are not self-inculpatory. Unlike those exculpatory statements in *White* that strengthened the incriminatory nature of the declarant's statements, the informant's statements here neither inculpated the informant nor exculpated defendant. In other words, the informant's interest was not at risk.

### B.

■ We also reject defendant's assertion that even if the informant's statements are not declarations against the informant's penal interest, that they are nonetheless declarations against his or her social interest and admissible under *N.J.R.E.* 803(c)(25). The current rule does not define "social interest." The previous version had provided, however, that "[a] statement is admissible if at the time it was made it ... created such a risk of making [the declarant] an object of hatred, ridicule or social disapproval in the community that a reasonable man in his position would not have made the statement unless he believed it to be true." *Evid. R.* 63(10).

To support her argument, defendant relies on *State v. West*, 145 *N.J.Super.* 226, 367 *A*.2d 453 (App.Div.1976), *certif. denied*, 73 *N.J.* 67, 372 *A*.2d 332 (1977), in which the Appellate Division found that an informant's alleged statements, that he had falsely accused the defendant of a drug offense to harm him, were admissible as a statement against interest. If truly made by the informant, those statements "can be expected to make of him an 'object of hatred,

ridicule or social disapproval.'" *Id.* at 233, 367 *A*.2d 453. Further, those statements exposed him to being indicted for "the giving of false information to a law enforcement officer or agency." *Ibid.*

Here, however, the informant's statements that he or she purchased marijuana from co-defendant Spence in the context of a police investigation does not place his or her social interest at risk. Viewed in the context of society's war against drug crimes, the informant's admission that he or she participated in two controlled drug buys does not make him or her "the enemy" as asserted by defendant. Because the police had used the informant on a number of occasions, "no reason [existed] why [he or she] should be treated any differently [from] a police officer who works undercover in drug trafficking as an agent of the government." *State v. Florez,* 261 *N.J.Super.* 12, 26, 617 *A*.2d 670 (App.Div. 1992), *aff'd,* 134 *N.J.* 570, 582, 636 *A*.2d 1040 (1994). Simply because the informant was acting as an agent of the State when he or she participated in the two marijuana buys, there is no risk of making him or her an object of hatred, ridicule, or social disapproval.

Having concluded that the informant's statements are not admissible under either of the foregoing exceptions to the hearsay rule, we emphasize that New Jersey has expressly declined to adopt the federal residual hearsay exception, *Fed.R.Evid.* 803(24), which allows "a general hearsay exception for statements not covered by a specific hearsay rule." Biunno, *Current N.J. Rules of Evidence,* 1991 Supreme Court Committee Comment on *N.J.R.E.* 803(c)(24) [Not Adopted] (2000); *State v. Bunyan,* 154 *N.J.* 261, 268, 712 *A*.2d 1091 (1998). The federal rule covers statements that possess "equivalent circumstantial guarantees of trustworthiness," provided that those statements meet various criteria enunciated in the rule. *Ibid.* (internal quotation marks omitted). The 1991 Supreme Court Committee stated that "[t]he adoption of Fed.R.Evid. 803(24), construable as a general relaxation rule, would represent a radical departure from New Jersey practice." *Ibid.* It is therefore clear that the confidential infor-

mant's statements must fit within one of our hearsay exceptions if it is to be considered as evidence at trial.

### C.

To satisfy the relevancy requirement for admitting the hearsay statements of the informant, *N.J.R.E.* 402, defendant argues that the informant's statements that he or she made two marijuana purchases from Spence exculpate her. However, the Court must consider both the exculpatory and inculpatory evidence from the informant when deciding whether the hearsay rule has mechanistically defeated defendant's ability to present a defense. *Chambers v. Mississippi,* 410 *U.S.* 284, 302, 93 *S.Ct.* 1038, 1049, 35 *L.Ed.*2d 297, 312–13 (1973). Also, under the doctrines of "opening the door," "curative admissibility" and "completeness," defendant would have been precluded "from successfully excluding from the prosecution's case-in-chief inadmissible evidence and then selectively introducing pieces of this evidence for the defendant's own advantage, without allowing the prosecution to place the evidence in its proper context." *State v. James,* 144 *N.J.* 538, 554, 677 *A.*2d 734 (1996).

### D.

The dissent posits that, by including the informant's statements in an affidavit submitted to a court in connection with a request for a search warrant, the State manifested its belief in the truth of those statements. Based on that reasoning, the dissent concludes that it was plain error for the trial court to have excluded the informant's statements that he or she purchased drugs only from Spence because those statements were admissible under *N.J.R.E.* 803(b)(2), as adoptive admissions by the State. *Post* at 163, 169–83, 784 *A.*2d at 1259–60, 1264–74. To support its position, the dissent relies on federal court of appeals decisions and one Appellate Division decision. *United States v. Warren,* 42 *F.3d* 647 (D.C.Cir.1994); *United States v. Kattar,* 840 *F.*2d 118 (1st Cir.1988); *United States v. Morgan,* 581 *F.*2d 933 (D.C.Cir.

1978); *State v. Dreher,* 302 *N.J.Super.* 408, 695 *A.*2d 672 (App. Div.), *certif. denied,* 152 *N.J.* 10, 702 *A.*2d 349 (1997), *cert. denied,* 524 *U.S.* 943, 118 *S.Ct.* 2353, 141 *L.Ed.*2d 723 (1998). We hold that the informant's statements to the police that he or she purchased drugs only from Spence were not admissible under *N.J.R.E.* 803(b)(2) as adoptive admissions by the State. Moreover, even if the Court agreed that in some limited instances statements used by the police to obtain search warrants could be construed as adoptive admissions, the failure of the trial court to permit defendant to introduce the informant's statements in this case was harmless error. *R.* 2:10–2.

Under the adoptive admissions exception, "a statement offered against a party[-opponent] which is . . . a statement whose content the party has adopted by word or conduct or in whose truth the party has manifested belief" is admissible as an exception to the hearsay rule. *N.J.R.E.* 803(b)(2). This Court has never decided whether the State's use of an informant's statement in an affidavit to support probable cause for a search warrant constitutes an adoptive admission under *N.J.R.E.* 803(b)(2). Our research has not uncovered any other state court decision resolving this precise issue. Our research further reveals that of the federal circuit courts, only the Court of Appeals for the District of Columbia has applied the adoptive admissions exception to hearsay statements contained in search warrant affidavits. *Morgan, supra,* 581 *F.*2d at 936–38. The Second Circuit, meanwhile, has expressly declined to address whether the adoptive admission exception applies to statements made in affidavits for warrants. *United States v. Ramirez,* 894 *F.*2d 565, 570–71 (2d Cir.1990) (noting that "[t]he information contained in the affidavits was gathered at a preliminary stage in the investigation, and hence subject to change as the investigation progressed").

Other than the Second Circuit and the District of Columbia Circuit, no other circuit court has even mentioned the issue of whether statements made in affidavits for warrants are admissible as adoptive admissions of the government. The dissent cites

*Warren, supra,* 42 *F.3d* 647, and *Kattar, supra,* 840 *F.*2d 118, in support of its position. However, neither of those cases discusses adoptive admissions in the context of warrant applications. *Warren* deals with hearsay statements that were included in a sworn statement of facts attached to a criminal complaint. *Warren, supra,* 42 *F.3d* at 655. Unlike an application for a search warrant, which is part of the investigatory stage, a criminal complaint is one of the first steps in a criminal prosecution. *Infra* at 165–66, 784 *A.*2d at 1261–62. *Kattar* deals with a sentencing memorandum submitted to a court during a criminal prosecution and a brief prepared by the government as part of a civil suit. *Kattar, supra,* 840 *F.*2d at 126, 130–31. Neither of those documents is analogous to an application for a search warrant, which is made during a precharge investigation. It is also noteworthy that *Warren, Kattar,* and *Morgan* were decided after the federal residual hearsay exception, *Fed.R.Evid.* 807, was adopted, and those decisions incorporate the federal rules' flexible approach to trustworthy evidence.

In the broader context of applying the party-opponent admissions exception to the State generally, the Second Circuit has determined that "the inconsistent out-of-court statements of a government agent made in the course of the exercise of his authority and within the scope of that authority, which statements would be admissions binding upon an agent's principal in civil cases, are not so admissible [in criminal cases] as 'evidence of the fact.'" *United States v. Santos,* 372 *F.*2d 177, 180 (2d Cir.1967) (discussing historical inability of government agents to bind the sovereign). The Fifth Circuit has declined to decide whether "informants who assist law enforcement officers in detecting crime ... should be deemed agents of the United States for purposes of the rule." *United States v. Pena,* 527 *F.*2d 1356, 1361 (5th Cir.), *cert. denied,* 426 *U.S.* 949, 96 *S.Ct.* 3168, 49 *L.Ed.*2d 1185 (1976). In the context of a statement made by an Internal Revenue Agent, the Sixth Circuit has specifically held that "[w]hile evidence of contradictory statements may be used to impeach a government agent, they may not be introduced to prove the truth of the

statements offered." *United States v. Pandilidis,* 524 *F*.2d 644 (6th Cir.1975), *cert. denied,* 424 *U.S.* 933, 96 *S.Ct.* 1146, 47 *L.Ed.*2d 340 (1976).

On the issue of whether statements made by government employees or agents, such as informants, during the investigative stage of a potential criminal proceeding should be considered binding on the State for purposes of the "party-opponent" requirement of the adoptive admissions rule, the Seventh Circuit has observed:

> Prior to adoption of the Federal Rules of Evidence, admissions by government employees in criminal cases were viewed as outside the admissions exception to the hearsay rule. *United States v. Powers,* 467 *F*.2d 1089, 1095 (7th Cir.1972). Because the agents of the Government are supposedly disinterested in the outcome of a trial and are traditionally unable to bind the sovereign (*United States v. Santos,* 372 *F*.2d 177, 180 (2d Cir.1967)), their statements seem less the product of the adversary process and hence less appropriately described as admissions of a party. Nothing in the Federal Rules of Evidence suggests an intention to alter the traditional rule and defendant has cited no truly contrary case indicating such a trend.
>
> [*United States v. Kampiles,* 609 *F*.2d 1233, 1246 (7th Cir.1979), *cert. denied,* 446 *U.S.* 954, 100 *S.Ct.* 2923, 64 *L.Ed.*2d 812 (1980) (finding that a government employee's statement did not meet any of the hearsay exceptions).]

At least one major treatise has expressed the same concern. 2 *McCormick on Evidence* § 259 (Strong ed., 5th ed.1999) (noting that "statements by agents of the government are often held inadmissible against the government" when the statements are made "by agents at the investigative level"). That view is consistent with this Court's admonition nearly half a century ago that extra caution must be exercised when deciding whether a hearsay statement should be admissible as evidence under the adoptive admissions exception. *Greenberg v. Stanley,* 30 *N.J.* 485, 498, 153 *A*.2d 833 (1959); *see also State v. Briggs,* 279 *N.J.Super.* 555, 562, 653 *A*.2d 1139 (App.Div.), *certif. denied,* 141 *N.J.* 99, 660 *A*.2d 1198 (1995).

 Affidavits containing the statements of informants are submitted to a court in an attempt to satisfy the probable cause requirements of the Fourth Amendment and of Article I, paragraph 7 of the New Jersey Constitution. Because both of those

constitutional provisions speak in terms of reasonableness, consideration of whether hearsay statements contained in the affidavit should be admissible in the subsequent jury trial of guilt or innocence "calls for a continuing reconciliation of competing values." *State v. Davis*, 50 *N.J.* 16, 22, 231 *A.*2d 793 (1967), *cert. denied*, 389 *U.S.* 1054, 88 *S.Ct.* 805, 19 *L.Ed.*2d 852 (1968). In this case, the affidavit containing the informant's hearsay statements was made to secure a search warrant. Defendant's indictment is based on the evidence obtained during the execution of that search warrant. The validity of that affidavit and whether probable cause was established are traditionally contested within preliminary proceedings in advance of trial. *See R.* 3:5–7.

 Although an informant's hearsay statements can be used to determine whether probable cause exists in the Fourth Amendment context, such statements are hearsay and generally inadmissible in a trial to determine guilt or innocence. *United States v. Matlock*, 415 *U.S.* 164, 173–75, 94 *S.Ct.* 988, 994–95, 39 *L.Ed.*2d 242, 252 (1974); *Jones v. United States*, 362 *U.S.* 257, 270–71, 80 *S.Ct.* 725, 735–36, 4 *L.Ed.*2d 697, 707 (1960), *overruled on other grounds by United States v. Salvucci*, 448 *U.S.* 83, 100 *S.Ct.* 2547, 65 *L.Ed.*2d 619 (1980); *Draper v. United States*, 358 *U.S.* 307, 311–12, 79 *S.Ct.* 329, 332, 3 *L.Ed.*2d 327, 331 (1959); *Brinegar v. United States*, 338 *U.S.* 160, 172–73, 69 *S.Ct.* 1302, 1309, 93 *L.Ed.* 1879, 1888–89 (1949); *State v. Ebron*, 61 *N.J.* 207, 212, 294 *A.*2d 1 (1972); *State v. Kasabucki*, 52 *N.J.* 110, 116–17, 244 *A.*2d 101 (1968). One of the problems with *Dreher* is its failure to focus properly on the point in time in a criminal proceeding at which the affidavit for a search warrant is submitted to a judicial officer. Although the affidavit there was submitted while the murder investigation was ongoing and one-and-a-half years before the defendant was indicted, *Dreher, supra*, 302 *N.J.Super.* at 503–04, 695 *A.*2d 672, the court concluded that "when the government, by submitting the statements to a judicial officer for the issuance of a search warrant, manifests its belief in the truth of such statements, ... the State should not be allowed to hide behind their

arguable inaccuracy and unreliability at another stage of the prosecution." *Id.* at 508, 695 *A.2d* 672. In deciding whether the State has adopted the statements contained in an affidavit submitted to a court in connection with an application for a search warrant, one important factor to consider is timing, i.e. was the affidavit submitted during the investigatory stage or the prosecutorial stage. The *Dreher* court seemingly concluded that this distinction was immaterial.

A criminal prosecution is generally commenced with the filing of formal charges, which initiate adversarial judicial criminal proceedings. *United States v. Gouveia,* 467 *U.S.* 180, 187, 104 *S.Ct.* 2292, 2297, 81 *L.Ed.*2d 146, 153 (1984); *Kirby v. Illinois,* 406 *U.S.* 682, 689–90, 92 *S.Ct.* 1877, 1882, 32 *L.Ed.*2d 411, 417–18 (1972). Arguably, the investigative period does not end until an indictment has been filed. When that occurs, "the State represents that it has sufficient evidence to establish a *prima facie* case. Once [an] indictment is returned, the State is committed to prosecute the defendant." *State v. Sanchez,* 129 *N.J.* 261, 276, 609 *A.2d* 400 (1992). Prior to the commencement of formal prosecution, " 'the State's investigative effort . . . is at a preliminary stage, . . . the police may still be attempting . . . to solve the crime[,] . . . [and] the State's decision to prosecute has not solidified.' " *State v. P.Z.,* 152 *N.J.* 86, 110, 703 *A.2d* 901 (1997) (quoting *State v. Tucker,* 137 *N.J.* 259, 290, 645 *A.2d* 111 (1994), *cert. denied,* 513 *U.S.* 1090, 115 *S.Ct.* 751, 130 *L.Ed.*2d 651 (1995)).

Here, the affidavit for the warrant was submitted to a judge during the investigatory stage, before any formal charges were filed. "The fact that the investigation had focused on [defendant and Spence] did not convert this into a post-charging proceeding." *State v. Reyes,* 237 *N.J.Super.* 250, 264, 567 *A.2d* 287 (App.Div. 1989). Defendant was not charged with any offense until the drugs were seized pursuant to the warrant. Consequently, the point in time at which the affidavit was submitted could justifiably preclude application of the adoptive admissions exception.

■ The dissent's approach would have a deleterious effect on our system of obtaining search warrants. As it stands, when a police officer applies to a court for a warrant, he or she does not vouch for the truth of an informant's statements; rather, he or she attests to the reliability of the informant in the past and asks the judge, as a neutral magistrate, to determine whether he or she has established probable cause and may further pursue the investigation. Police officers would be placed in a nearly impossible position were we to require that every fact alleged in an application for a warrant was true, such that every statement became an adoptive admission for the purposes of trial.

### III.

Defendant contends that she was denied a fair trial because the trial court denied her motion to sever her trial from that of co-defendant Spence. Defendant maintains that in a joint trial, her strategy to place the informant's statements before the jury was antagonistic to Spence's because the informant's statements would exculpate defendant while inculpating Spence. One of the reasons for denying the severance motion was the court's finding that the informant's statements were inadmissible hearsay. In affirming the denial of the severance motion, the Appellate Division concluded that "[t]he defenses of ... defendant [and Spence] were not so antagonistic to warrant severance" and that "[n]either defendant made statements implicating the other and each was subject to cross-examination thoroughly." The Appellate Division also rejected defendant's claims that the evidence against her was *de minimis* and that she was subjected to the danger of guilt by association. In particular, the court pointed out that the jury was capable of differentiating between defendant and Spence, as evidenced by the fact that it convicted Spence of the cocaine and marijuana charges, but convicted defendant of only the marijuana charges.

■ Two or more defendants may be tried jointly "if they are alleged to have participated in the same act or transaction or in

the same series of acts or transactions constituting an offense or offenses." *R.* 3:7–7. There is a "general preference to try co-defendants jointly," *State v. Robinson,* 253 *N.J.Super.* 346, 364, 601 *A.*2d 1162 (App.Div.), *certif. denied,* 130 *N.J.* 6, 611 *A.*2d 646 (1992), particularly when "much of the same evidence is needed to prosecute each defendant." *State v. Brown,* 118 *N.J.* 595, 605, 573 *A.*2d 886 (1990). That preference is guided by a need for judicial efficiency, to accommodate witnesses and victims, to avoid inconsistent verdicts, and to facilitate a more accurate assessment of relative culpability. *State v. Sanchez,* 143 *N.J.* 273, 282, 670 *A.*2d 535 (1996). The "disposition of a motion for a severance ... is addressed to the sound discretion of the trial court." *State v. Scioscia,* 200 *N.J.Super.* 28, 42, 490 *A.*2d 327 (App.Div.), *certif. denied,* 101 *N.J.* 277, 501 *A.*2d 942 (1985).

Nonetheless, "the interest in judicial economy cannot override a defendant's right to a fair trial." *Sanchez, supra,* 143 *N.J.* at 282, 670 *A.*2d 535. Thus, relief from prejudicial joinder is permitted by *Rule* 3:15–2, which provides:

> If for any other reason it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses or of defendants in an indictment or accusation the court may order an election or separate trials of counts, grant a severance of defendants, or direct other appropriate relief.
>
> [*R.* 3:15–2(b).]

When considering a motion to sever, a court must balance the potential prejudice to a defendant against the interest in judicial economy. *Brown, supra,* 118 *N.J.* at 605, 573 *A.*2d 886; *State v. Coleman,* 46 *N.J.* 16, 24, 214 *A.*2d 393 (1965), *cert. denied,* 383 *U.S.* 950, 86 *S.Ct.* 1210, 16 *L.Ed.*2d 212 (1966). "The test for granting severance ... is a rigorous one." *Brown, supra,* 118 *N.J.* at 605–06, 573 *A.*2d 886. Separate trials are necessary when co-defendants' "defenses are antagonistic and mutually exclusive or irreconcilable." *Id.* at 605, 573 *A.*2d 886. However, "[i]f the jury can return a verdict against one or both defendants by believing neither, or believing portions of both, or, indeed, believing both completely, the defenses are not mutually exclusive." *Id.* at 606, 573 *A.*2d 886. Here, defendant's claim of prejudice is

primarily based on the exclusion of the informant's statements. Defendant reasons that the trial court's decision to exclude the informant's statements prejudiced her because that decision protected Spence's right to confrontation at the expense of her right to present a defense.

We are satisfied that defendant and Spence did not urge antagonistic defenses. Defendant denied knowledge of or involvement with any of the drugs found in the apartment. Spence admitted that the marijuana found in her bedroom was hers, but denied knowledge of any of the other drugs found in the apartment. Spence suggested that third parties had put the other drugs in the apartment. Not only are those defenses not antagonistic, but Spence's admission that some of the marijuana found in the apartment belonged to her might have benefitted defendant. Nor are their defenses mutually exclusive or irreconcilable. The jury could have believed that they were both lying, and convicted them of all crimes charged; believed aspects of both of their stories, and fashioned a suitable verdict; or believed both of them completely, and acquitted them. In addition, because drugs were found in both defendant's and Spence's bedrooms, and in common areas of the apartment, the evidence against both was more than *de minimis* in terms of joint or sole possession of the CDS.

The determination whether to grant a severance was addressed to the trial court's guided discretion. That decision was not a close call in this case. The sole purpose for seeking a severance was to facilitate defendant's attempt to place before the jury the informant's two statements. Defendant's contention that in denying the severance motion, the trial court "chose to enforce [Spence's] constitutional right to confront and cross-examine witnesses at the expense of [her] right to present a defense" is mistaken. The reason that the trial court refused to admit the informant's statements into evidence is because those statements are inadmissible hearsay that do not satisfy any of our hearsay exceptions. We agree that if the Court concluded that the informant's statements were admissible as adoptive admissions and

that excluding them was plain error, a severance would have been necessary to protect Spence's rights to a fair trial.

Finally, there was no greater concern about guilt by association in this case than that which exists in all joint trials in which the jury is instructed to deliberate separately concerning each defendant on each count. The danger of guilt by association "that inheres in all joint trials is not in itself sufficient to justify a severance, provided that by proper instructions to the jury, the separate status of co-defendants can be preserved." *Brown, supra,* 118 *N.J.* at 605, 573 *A.*2d 886. In this case, we know that the jury was able to consider the co-defendant's guilt separately from defendant because it convicted them of different crimes. We hold that defendant's severance motion was properly denied.

## IV.

The judgment of the Appellate Division is affirmed.

STEIN, J., dissenting.

In this otherwise routine drug prosecution, the Court's disposition, regrettably, warrants close scrutiny. Overruling *State v. Dreher,* 302 *N.J.Super.* 408, 508, 695 *A.*2d 672 (App.Div.1997), and rejecting the most persuasive federal precedents and legal commentary on the question, the Court concludes that the statement by a police informant of established reliability that he twice had purchased marijuana from the co-defendant Spence (but never from defendant Brown) would have been inadmissible as hearsay in a severed prosecution of defendant. The Court reaches that conclusion notwithstanding the adoptive admissions' exception to hearsay contained in *Rule* 803(b)(2) of the New Jersey Rules of Evidence, and notwithstanding the State's express reliance on the informant's statements in support of a successful search warrant application leading to the discovery of cocaine and marijuana in the apartment rented by the co-defendant and in which defendant occupied one room.

The Court's regressive holding deprives defendant of a new and severed trial in which she should have been permitted to prove, unencumbered by a hearsay objection from co-defendant Spence, that the trusted informant on whom the police relied to obtain a search warrant told the investigating officer that he twice purchased marijuana from Spence but never from Brown. The State's contention that the informant's statement—even in a severed trial—constitutes hearsay ignores the analytical rationale for the exclusion of party admissions from the hearsay rule: the lack of an opportunity to cross-examine the declarant is irrelevant when it is the party's own declaration (or adoptive admission) that is offered, obviating the party's need to cross-examine itself but affording full opportunity for the party to testify and explain or qualify its prior assertion. Thus, the jury should have been allowed to hear evidence of the informant's statement, in which event it might have entertained a reasonable doubt about whether Brown possessed the marijuana in the second floor dresser.

In my view, the Court's ruling not only deprives this defendant of a fair trial, but also ignores the fundamental fairness and due process interests that are vindicated by application of the adoptive admission's exception in this context. For the Court to elevate the State's insignificant interest in the exclusion of the informant's obviously reliable and unchallenged statement over defendant's clear and substantial interest in its admission turns due process on its head. I respectfully dissent.

I

A

The correct resolution of this appeal turns on a single issue: whether the lower courts properly ruled against defendant Violet Brown's motion for severance on the assumption that, even in a separate trial, an informant's statement that he had twice purchased marijuana from co-defendant Sharon Spence, relied on by police to obtain a search warrant for Spence's apartment in which

Brown rented a room, would have been excluded as inadmissible hearsay.

Prior to trial, the motion judge grappled with the hearsay issue, implying that if the informant's statements were admissible in a separate trial the severance motion would be granted:

> The [c]ourt actually reviewed the case law that had been cited, and it is certainly an interesting argument put forth by Mr. Obler, however, I have searched high and low to, frankly, understand how the statement could be admissible through the officer and get around the hearsay aspect of the statement, and I find it falls under no exception to the hearsay rule, and essentially, for those reasons, I have it actually more spelled out in a memoranda, which I will provide to Counsel, that I have denied the application to sever, that that statement could not be utilized in any way through the cross-examination of the officer, and consequently, there would be no need to sever as that statement would not be allowed, at least by this [c]ourt, to be testified to by the affiant officer.

The Appellate Division dismissed the issue, without analysis, in a single sentence: "Whether there were separate trials does not change the inadmissibility of the statement by the informant to the officer." The Court's disposition adopts the conclusion of the lower court's, observing that the "informant's statements ... are inadmissible hearsay that do not satisfy any of our hearsay exceptions." *Ante* at 162, 784 *A.*2d at 1259.

The lower courts conclusion on that issue, however, was clearly in error. In a severed trial, Brown would have been able to cross-examine Officer Crosby, the State's primary witness and the officer that applied for the search warrant for Spence's apartment, about the informant's statements concerning controlled buys of marijuana from Spence. Those statements, because of their inherent reliability, would not be excluded as hearsay in a severed trial *when offered only against the State* because they constitute adoptive admissions pursuant to *Rule* 803(b)(2) of the New Jersey Rules of Evidence (Evidence Rules or Rules of Evidence). *See* Biunno, *Current N.J. Rules of Evidence,* comment 2 on *N.J.R.E.* 803(b)(2)(2001) ("A statement is admissible against a party under the terms of these subsections if that party, with knowledge of the contents of the statement, has by words or other conduct[ ] manifested his adoption of it or his belief in its truth."). *See also*

*Dreher, supra.,* 302 *N.J.Super.* at 508, 695 *A.*2d 672 (App.Div.1997) ("If the statements [to a judicial officer for the issuance of a search warrant] are reliable and accurate enough for one stage of the prosecution, the State should not be allowed to hide behind their arguable inaccuracy and unreliability at another stage of the prosecution.")

Because the informant's statements clearly would have tended to shift responsibility for possession of the marijuana found in the apartment from Brown to Spence those statements were significantly exculpatory of Brown, and the denial of her motion for severance constituted reversible error.

## B

The evidence adduced at the joint trial of Spence and Brown demonstrates the importance and, for Brown, the exculpatory quality of the informant's statements to Officer Crosby. The Court's opinion, *ante* at 144–45, 784 *A.*2d at 1248–49 accurately describes the location of the drugs discovered when the search warrant was executed, as well as portions of the defendants' testimony concerning their denial of ownership of the drugs:

When the search warrant was executed on August 5, 1994 at about 5:48 a.m., defendant and co-defendant Spence were present in their respective second- and third-floor bedrooms. The kitchen was located on the second floor. The following quantities of CDS were recovered: 18.97 grams of cocaine in the freezer section of the refrigerator; 3.41 grams of marijuana in the kitchen pantry; 100.48 grams of marijuana in defendant's second-floor bedroom; 1.55 grams of marijuana on top of a chest of drawers in Spence's third-floor bedroom; and 1.89 grams of marijuana from the chest of drawers in Spence's third-floor bedroom. In addition, a film canister with several partially smoked marijuana cigarettes was found on the headboard of the bed in defendant's bedroom, as well as a pack of rolling papers, a cigarette lighter, a plastic sandwich bag, and some loose vegetation located in the lid of a box elsewhere in defendant's bedroom. In addition to the CDS, the police also found a passport issued to Violet Melrose Tomlinson and a Social Security card in the name of Violet Melrose Brown in a purse found in the second-floor bedroom. Several other personal items belonging to Brown were also found in her bedroom. A digital scale, without batteries or a back, was found on the floor outside of Spence's third-floor bedroom. A box of razor blades and numerous plastic ziplock bags were seized from under the sink in the bathroom on the second floor.

. . . .

Defendant testified at trial and denied involvement with, or knowledge of, any of the drugs found in the apartment. She testified that although her bedroom was located on the second floor, she worked as a housekeeper and babysitter in Princeton and was rarely at the apartment other than to sleep two or three nights per week. Defendant claimed that she kept nothing in the chest of drawers located in her second-floor bedroom and that, in fact, she had never touched that chest of drawers. She also explained that she did not use the kitchen, including the refrigerator, because she ate her meals at her job and returned home late at night. Defendant testified that she never ventured up to the third floor. She stated that there was no lock on her bedroom door and that she did not know whether others had access to her room because she was rarely at the apartment.

Spence testified that at least some of the 3.44 grams of marijuana recovered from her third-floor bedroom was possessed by her for her personal use. She denied, however, knowledge of the marijuana or cocaine found in other locations in the apartment. She explained that the digital scale found on the third floor was inoperable, but that she kept it because her young children liked to play with it.

Brown testified at trial that she sought lodging with Spence, who was married to her nephew, after leaving her marital home under exigent circumstances because of her husband's assaultive behavior. She explained that she arrived with just one suitcase that contained clothing and valued personal belongings, including family photographs. She testified that she worked in Princeton as a housekeeper and slept only two or three nights each week in Spence's apartment. When occupying the second-floor bedroom, she stated that she kept her clothes either in her suitcase or in the bedroom closet, and had never used the chest of drawers in which approximately 100 grams of marijuana had been found, secreted in a GAP clothing store bag and tucked away amid various articles of women's clothing. Brown testified that she paid Spence between $200 to $300 monthly in rent, dependent on her needs because she was unemployed. Spence acknowledged during her testimony that before Brown became a tenant other women had occupied the second-floor bedroom and had put their clothes in the dresser where the GAP bag with marijuana was found.

As the Court's opinion acknowledges, the jury acquitted Brown of all charges relating to the cocaine found in the refrigerator's freezer section, but convicted her on the counts relating to marijuana possession and distribution. Spence was convicted on all

counts. Because Spence acknowledged ownership of the small amount of marijuana found in the third-floor bedroom, the critical issue for the jury with respect to Brown depended on its conclusion about the 100 grams of marijuana found in the dresser drawer in the second-floor bedroom.

On that issue the informant's statements, set forth in Officer Crosby's affidavit in support of the search warrant, clearly could have influenced the jury. The following are verbatim excerpts from Officer Crosby's affidavit:

3. On Wednesday, July 27, 1994, Deponent received information from a reliable and confidential informant [ ] herein after referred to as Informant "A".

Informant "A" has provided information in the past which has resulted in the arrests of fifteen (15) persons for Dangerous Drug Offenses, one (1) of whom has been convicted and the remainder are pending court action.

Informant "A["] stated Sharon Spence and Violet Tomlinson are selling large quantities of Marijuana from their Second Floor Apartment at 154 Hamilton Avenue.

Informant "A" stated same has purchased Marijuana from Sharon Spence at 154 Hamilton Avenue during the same week.

On Friday, July 29, 1994, information was received from Informant "A" who related Spence and Tomlinson are continuing to sell Marijuana from the apartment. *Informant "A" stated Sharon Spence is utilizing a pager to be contacted by customers. Informant "A" gave Spence's pager number as 421–9292.*

During the week of July 24, 1994, Deponent met Informant "A" at a pre-arranged location.

After ensuring Informant "A" was free of any contraband, Deponent furnished Informant "A" with a sum of United States currency ... and instructed same to go to the Second Floor Apartment at 154 Hamilton Avenue and attempt to purchase Marijuana.

While under constant surveillance by Deponent, Informant "A" walked directly to 154 Hamilton Avenue and entered the premise via the opened and unlocked front door.

After a short period of time, Informant "A" exited 154 Hamilton Avenue and walked directly to a pre-arranged location, where same turned over to Deponent *a quantity of green vegetation which Informant "A" stated was Marijuana just purchased from Sharon Spence at her Second Floor Apartment at 154 Hamilton Avenue* with the monies provided.

Informant "A" stated same was greeted at the apartment door by Sharon Spence who allowed same to enter the premise. Informant "A" stated same told Spence the quantity desired and Spence walked toward the front of the apartment and returned shortly with the Marijuana and the transaction was made.

The suspected Marijuana was conveyed to the Vice Enforcement Unit Office, where a field test showed a positive reaction for Marijuana. . . .

On Monday, August 1, 1994, information was received from Informant "A", who related Sharon Spence and Violet Tomlinson are continuing to sell Marijuana from their Second Floor Apartment at 154 Hamilton Avenue. Informant "A" also related that the two (2) women have started selling Crack Cocaine and powder Cocaine from the residence.

During the week of July 31, 1994, Deponent met Informant "A" at a pre-arranged location.

After ensuring Informant "A" was free of any contraband, Deponent furnished same with a sum of United States currency . . . and instructed Informant "A" to go to the Second Floor Apartment at 154 Hamilton Avenue and attempt to purchase Marijuana.

While under constant surveillance by Deponent, Informant "A" walked directly to the front of 154 Hamilton Avenue and entered via the opened and unlocked front door.

After a short time, Informant "A" exited the premise and walked directly to a pre-arranged location which under constant surveillance by Deponent. At said location, Informant "A" turned over to Deponent *a quantity of green vegetation which Informant "A" stated was Marijuana just purchased from Sharon Spence in her apartment at 154 Hamilton Avenue.*

Deponent conveyed the evidence to the Vice Enforcement Unit Office where a field test showed a positive reaction for Marijuana. . . .

4. A. Sharon M. Spence is a Jamaican female, 29 years of age, born September 15, 1954, 5'7" tall, weighing 130–140 pounds, having red hair which is worn in dreadlocks and a light complexion.

. . . .

The portion of 154 Hamilton Avenue for which this application is being made is for the Second Floor Apartment and any other areas of 154 Hamilton Avenue which Sharon Spence or Violet Tomlinson have access to and exercise control over whether jointly or individually. Entry to the Second Floor Apartment (which includes the Second and Third Floors of the building) is gained by ascending the stairs located behind the exterior double doors to the Second Floor where the apartment door is located at the top of the stairs.

According to records maintained by the Public Service Electric and Gas Company, the service to the Second Floor Apartment at 154 Hamilton Avenue is listed to Sharon Spence of the same address.

. . . .

5. *Based on the information received from a reliable and confidential informant and my own personal observations, all corroborated by two (2) controlled purchases of Marijuana from Sharon Spence at 154 Hamilton Avenue, Second Floor Apartment, it is Deponent's belief that Sharon Spence is utilizing her apartment at 154 Hamilton Avenue to store and secrete Controlled Dangerous Substances (to wit Marijuana and Cocaine).*

. . . .

6. *Wherefore, Deponent requests that the search warrants be issued, authorizing a search of the individual and premise previously listed in Section Four of this affidavit in the manner prescribed by law.*

[ (Emphasis added).]

Several aspects of Officer Crosby's affidavit are noteworthy:

1. Although the affidavit indicates that the informant stated that both Spence and Brown were selling marijuana from the apartment, no statement in the affidavit suggests that the informant had personal knowledge of Brown's involvement in marijuana sales.

2. Several statements in the affidavit demonstrate that the informant had personal knowledge of Spence's sales of drugs. The informant knew the number of Spence's pager. During the weeks of July 24 and August 1, 1999, the informant made two controlled buys of marijuana from Spence. Moreover, Crosby's affidavit includes a detailed personal description only of Spence, presumably obtained from the informant.

3. The affidavit states that Crosby believes, based on the information received from the informant, "*that Sharon Spence is utilizing her apartment at 154 Hamilton Avenue to store and secrete Controlled Dangerous Substances (to wit Marijuana and Cocaine)."* (Emphasis added). No similar allegation is made by Officer Crosby concerning Violet Brown. Paragraph six of the affidavit requests that a search warrant be issued authorizing a search of *Sharon Spence* and 154 Hamilton Avenue (the individual and premise previously listed in Section Four of this Affidavit).

As Brown's counsel had argued before the motion judge, if the jury knew that the informant's two controlled buys from Sharon Spence constituted the basis for the police search of the premises, the jury might well have determined that the marijuana in the second-floor dresser belonged to Spence, not Brown, and on that basis may have acquitted Brown of the distribution and school-zone charges.

## II

### A

*Rule* 3:15–2(b) authorizes separate trials in cases where joinder of defendants would be prejudicial:

> If for any other reason it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses or of defendants in an indictment or accusation the court may order an election or separate trials of counts, grant a severance of defendants, or direct other appropriate relief.

Although we have acknowledged that ordinarily a joint trial is preferable and more efficient in cases where more than one defendant allegedly participated in the same series of criminal acts, *State v. Brown,* 118 *N.J.* 595, 605, 573 *A.*2d 886 (1990), we also have observed that "the interest in judicial economy cannot override a defendant's right to a fair trial." *State v. Sanchez,* 143 *N.J.* 273, 282, 670 *A.*2d 535 (1996).

In a slightly different context, we stated in *Sanchez* that the disposition of a severance motion "requires a balancing of the State's interest in the economy of a joint trial and a criminal defendant's interest in presenting exculpatory evidence to the trier of fact." *Id.* at 290, 670 *A.*2d 535. We added:

> To reconcile those competing concerns in a given case, the trial court must focus on the substance and quality of the proffered testimony, and attempt to ascertain the testimony's exculpatory value. The court should distinguish between credible, substantially exculpatory testimony and testimony that is insignificant, subject to damaging impeachment, or unduly vague, conclusory, or cumulative. Where the testimony rendered unavailable by a joint trial is not substantially exculpatory, a defendant has not suffered cognizable prejudice for the purpose of *Rule* 3:15–2(b). Where, however, the proffered testimony is likely to be significantly exculpatory, denying the defendant's severance motion could be highly prejudicial to the defendant, and potentially could lead to the conviction of an innocent person.
> [*Id.* at 291, 670 *A.*2d 535.]

As noted earlier, *supra,* at 144–45, 784 *A.*2d at 1248, the motion court implied that the severance motion would have been granted if the court had determined that, in a separate trial of Brown, the informant's statements to Officer Crosby did not constitute inadmissible hearsay. The motion court did not perceive, however, and defense counsel did not argue that the informant's statements,

if Brown's severance motion had been granted, would be admissible under *N.J.R.E.* 803(b) as a statement by a party opponent. Professor McCormick, in his treatise on evidence, offered several explanations for the exclusion of admissions from the bar of the hearsay rule:

> "The admissibility of an admission made by the party himself rests not upon any notion that the circumstances in which it was made furnish the trier means of evaluating it fairly, but upon the adversary theory of litigation. A party can hardly object that he had no opportunity to cross-examine himself or that he is unworthy of credence save when speaking under sanction of an oath."
>
> [2 *McCormick on Evidence* § 254 (Strong ed., 4th ed.1992)(quoting Morgan, *Basic Problems of Evidence*, 265–66 (1963)).]
>
> Wigmore, after pointing out that the party's declaration has generally the probative value of any other person's assertion, argued that it had a special value when offered *against* the party. In that circumstance, the admission discredits the party's statements inconsistent with the present claim asserted in pleadings and testimony, much like a witness impeached by contradictory statements. Moreover, he continued, admissions pass the gauntlet of the hearsay rule, which requires that extra-judicial assertions be excluded if there was no opportunity for the opponent to cross-examine because it is the opponent's own declaration, and "he does not need to cross-examine himself." Wigmore then added that "the Hearsay Rule is satisfied" since the party "now as opponent has the full opportunity to put himself on the stand and explain his former assertion."
>
> [2 *McCormick on Evidence* § 254 (Strong ed., 4th ed.1992)(quoting 4 Wigmore, *Evidence* § 1048 (Chadbourne rev.1972)).]

The doctrine of adoptive admissions, which is simply an extension of the principle that admissions by a party are not excluded by the hearsay rule, treats as admissions a statement that a party either adopts or manifests belief in its truth. Application of that sound principle in the circumstance of an informant's statement used in a police officer's affidavit in support of a search warrant application is illustrated by *United States v. Morgan*, 581 *F*.2d 933 (D.C.Cir.1978). In *Morgan*, police officers in Washington, D.C., obtained a search warrant to search a one-family dwelling in northwest Washington for illegal drugs. The warrant was based on the Affidavit of Detective Mathis who stated that

> a reliable informant had advised him that a black male, age 22 to 24 and known as "Timmy," was selling drugs from inside the house; that "within the past 48 hours" Mathis had gone to the house with the informant and waited outside while the informant made a "controlled" buy; that upon rejoining Mathis, the informant

handed him some pink pills, later identified as phenmetrazine; and that the informant said he had purchased these pills from Timmy.

[*Id.* at 934.]

When the officers arrived to execute the warrant, Timmy was not there. Defendant Morgan, holding a German Shepard on a leash, and four other men were in the front hallway. The officers' trial testimony indicated that Morgan grabbed some pink pills from his pocket and threw them to the ground, attempting to crush them with his foot. An officer recovered twelve of those pills, and an additional seventy-seven pills from the basement, which later were determined to be phenmetrazine. At trial the government tried to connect defendant to the pills in the basement. Defendant denied any such connection, contending that he came to the house every other day to walk several dogs. On three occasions during the trial, defendant's counsel, relying on the statements in the affidavit supporting the search warrant, sought to establish that Timmy, the homeowner's son, lived in the house and was selling drugs. The trial court excluded that evidence as irrelevant and hearsay. *Id.* at 935–36.

Reversing Morgan's conviction, the Court of Appeals first concluded that the informant's statements to Detective Mathis clearly were relevant:

> In this case it is not clear whether the jury found that appellant intended to distribute the twelve pills which he assertedly threw on the floor or the seventy-seven pills found in the basement. In either event, however, evidence that another person was selling phenmetrazine from the house was decidedly relevant. If the jury had believed that "Timmy" was a dealer in residence, it might have concluded that appellant had merely purchased the twelve pills found in his possession from Timmy, and that Timmy, not appellant, exercised dominion and control over the seventy-seven pills in the basement with intent to distribute them. *Since there was no evidence of actual sales by appellant, the jury was asked to rely solely on speculative inferences about intent to distribute. It might not have drawn such inferences if the evidence suggested that a third person was the distributor.* Under these circumstances, we see no basis to exclude evidence of actual sales by a third person on grounds of relevancy.

[*Id.* at 936–37 (emphasis added)(footnotes omitted).]

The D.C. Circuit then determined that the informant's statements were erroneously excluded as hearsay because the police had vouched for their reliability:

> The Federal Rules of Evidence specifically provide that certain categories of out-of-court statements offered to show the truth of the matter asserted shall not be regarded as "hearsay." Under Rule 801(d)(2)(B) such a statement is not barred as hearsay if a party-opponent "has manifested his adoption or belief in its truth. . . ." This Rule plainly applies to the informant's statements to Detective Mathis. The government manifested its belief in the truth of the informant's statements about Timmy by characterizing them as "reliable" in a sworn affidavit to a United States Magistrate.
>
> . . . .
>
> Clearly, statements in which the government has manifested its "adoption or belief" stand on more solid ground than mere out-of-court assertions by a government agent. We do not decide that just *any* statement the informant might have made is admissible against the government. We decide only that where, as here, the government has indicated in a sworn affidavit to a judicial officer that it believes particular statements are trustworthy, it may not sustain an objection to the subsequent introduction of those statements on grounds that they are hearsay.
>
> [*Id.* at 937–38 (footnotes omitted).]

*See also United States v. Warren,* 42 *F.3d* 647, 653 (D.C.Cir.1994) (holding that trial court erred in excluding as hearsay police officer's sworn statement to federal magistrate that an individual other than defendant leased apartment from which drugs were sold, and holding statement admissible as "non-hearsay statement against the Government 'of which the [Government] has manifested an adoption or belief in its truth' ") (quoting *Fed.R.Evid.* 801(d)(2)(B)); *United States v. Kattar,* 840 *F.*2d 118, 130–31 (1st Cir.1988) (holding that trial court in extortion prosecution erred in excluding as hearsay statements in briefs filed by Justice Department in other related proceedings that contradicted evidence introduced by government against defendant, and holding that such statements were admissible under Rule 801(d)(2)(B) [adoptive admissions] because Justice Department had manifested its belief in substance of contested documents and submitted them to other federal courts to show truth of matter contained therein).

In *Dreher, supra,* 302 *N.J.Super.* at 503–08, 695 *A.*2d 672, the Appellate Division similarly concluded that the trial court had erred in precluding the defense from cross-examining an investigator about an exculpatory statement he had made in support of an application for a search warrant. The affidavit stated that on the day of the murder a friend of the victim had called her at

home five times and that two of those calls had been answered by an unidentified male—presumably not the defendant. Because defendant had an alibi for the time of day the unidentified male answered the telephone, he sought to elicit from the investigator his statement about those calls. The trial court excluded the testimony as hearsay. *Id.* at 503–05, 695 *A*.2d 672.

The Appellate Division disagreed, although it concluded that the error was harmless. Holding that the investigator's statement should have been admitted as an adoptive admission pursuant to *N.J.R.E.* 803(b)(2), the court observed:

> We find that during the early stages of a prosecution, it is inappropriate to bind the prosecution with any and all statements made by its agents in the course of their employment. The statements, however, take on a different status when the government, by submitting the statements to a judicial officer for the issuance of a search warrant, manifests its belief in the truth of such statements. If the statements are reliable and accurate enough for one stage of the prosecution, the State should not be allowed to hide behind their arguable inaccuracy and unreliability at another stage of the prosecution. We note that, unlike *Ramirez, supra,* defendant offered the evidence while Allman was on the stand testifying. Thus, any inaccuracy in the statement could have been demonstrated to the jury and, as defense counsel below suggested, the weight to be given the statement could have been decided by the jury.
>
> [*Id.*]

## B

The Court concludes that the informant's statement that he purchased drugs from Spence are not admissible as an adoptive admission. The Court acknowledges the significance of the issue when it concedes that if "the informant's statements were admissible as adoptive admissions and that excluding them was plain error, a severance would have been necessary." *Ante* at 162, 784 *A*.2d at 1259.

Regrettably, the Court relies primarily on four significantly distinguishable federal cases in advancing the proposition that the adoptive admissions rule should not apply to agents of the government. In *United States v. Santos,* 372 *F*.2d 177 (2d Cir.1967), defendant was convicted of assaulting a federal officer and, on appeal, contested the trial court's exclusion as hearsay of an

affidavit by a narcotics agent that witnessed the assault and that named an assailant other than defendant. That agent testified for the government but was not questioned on cross-examination by defense counsel about the affidavit, and no evidence suggested that the government had vouched for or relied on the content of the agent's affidavit. The Second Circuit upheld the exclusion, observing in *dictum* that admissions by government agents cannot bind the government in criminal cases. That court observed that prosecutions by the federal government are "on behalf of all the people of the United States," and therefore all government agents that assist in the prosecution "stand in relation to the United States and in relation to the defendant no differently from persons unconnected with ... the prosecution." *Id.* at 180. In *United States v. Pena,* 527 *F.*2d 1356 (5th Cir.), *cert. denied,* 426 *U.S.* 949, 96 *S.Ct.* 3168, 49 *L.Ed.*2d 1185 (1976), defendant was convicted of drug-related offenses and, on appeal, challenged the exclusion of hearsay testimony of a government informant that implied that defendant had been "set up." The Fifth Circuit sustained the exclusion, noting that the allegedly exculpatory statements were made several months after the informant terminated his relationship with the government. *Id.* at 1360.

In *United States v. Pandilidis,* 524 *F.*2d 644 (6th Cir.1975), defendant was convicted of a misdemeanor based on late filing of income tax returns and, on appeal, challenged the exclusion from evidence of an out-of-court statement by an Internal Revenue Service employee to the effect that defendant's infraction was merely civil, not criminal. *Id.* at 650. No evidence suggested that the government had vouched for or relied on the employee's statement. The Sixth Circuit affirmed the exclusion. *Ibid.* Finally, in *United States v. Kampiles,* 609 *F.*2d 1233 (7th Cir.1979), *cert. denied,* 446 *U.S.* 954, 100 *S.Ct.* 2923, 64 *L.Ed.*2d 812 (1980), defendant was convicted under an indictment charging him with providing confidential government documents to a Soviet agent, specifically a portion of a "KH–11 System Technical Manual," Copy No. 155. *Id.* at 1234. A defense witness testified that after defendant left government service she saw a "KH–11" document

in his office, implying that the "Manual" defendant allegedly delivered was still in government possession after his termination. *Id.* at 1237. On cross-examination she acknowledged that the document she saw may have been a "KH–11" *Handbook*, not a Manual. *Id.* at 1237 n. 7. On appeal, defendant argued that the lower court erred in excluding as hearsay the out-of-court statement of another governmental employee to the effect that no "KH–11" *Handbook* was in the office. No evidence suggested that the government had vouched for or relied on that employee's testimony, and the Seventh Circuit rejected defendant's contention that the statement was admissible as an admission by a government agent. *Id.* at 1246. In affirming the exclusion of the out-of-court statement, the Seventh Circuit noted that, *in contrast, Morgan, supra,* 581 *F.*2d 933, "was a case in which the government had expressed its belief in the statement of the declarant under Rule 801(d)(2)(B)." *Kampiles,* 609 *F.*2d at 1246 n. 16.

In *Morgan, supra,* Judge Bazelon rejected the government's reliance on *Santos* and *Pandilidis,* two of the four cases principally relied on by the Court, noting that they were decided before adoption of the Federal Rules of Evidence:

> It is not clear whether these cases survive the Federal Rules. Rule 801(d)(2)(D) provides that statements made by an "agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship" shall be treated as admissions by his principal. As in the case of Rule 801(d)(2)(B), there is no indication in the history of the Rules that the draftsmen meant to except the government from operation of Rule 801(d)(2)(D) in criminal cases.

> [581 *F.*2d at 938 n. 15.]

The *Morgan* court also distinguished those cases based on the lack of governmental reliance on their truthfulness:

> Most basically, we think the government reads too much into the position taken by our sister Circuits. None of the cases on which it relies deals with the problem of out-of-court statements in which the government itself has manifested its "adoption or belief." Rather, to the extent these cases survive publication of the Federal Rules, a question we need not decide here, they establish only that the prosecution is excepted from the general rule that admissions made by an agent during the course of the agency and concerning matters within the scope of the agency are

binding on his principal. Clearly, statements in which the government has manifested its "adoption or belief" stand on more solid ground than mere out-of-court assertions by a government agent. We do not decide that just Any [sic] statement the informant might have made is admissible against the government. We decide only that where, as here, the government has indicated in a sworn affidavit to a judicial officer that it believes particular statements are trustworthy, it may not sustain an objection to the subsequent introduction of those statements on grounds that they are hearsay.

[*Id.* at 938 (footnote omitted).]

A commentator also has reconciled the different results in *Santos* and *Morgan* on the basis of the significantly greater governmental reliance on the governmental agent in *Morgan*:

The holdings in *Santos* and *Morgan* appear to be inconsistent. Analysis of these cases in light of the identity of interest rationale, however, illustrates that they can be reconciled. In *Santos,* the identity of interest test was not satisfied. The agent's statement was made in an affidavit which supported a complaint against someone other than the ultimate defendant. This affidavit commenced investigative proceedings with respect to an entirely different criminal matter and could not fairly be attributed to the prosecution of Santos. In *Morgan,* on the other hand, the agent, after some investigation, initiated the adversarial proceedings by seeking and obtaining a search warrant against the defendant. Thus, the agent's interest was substantially the same as the prosecution's and it was fair to characterize his affidavit as a vicarious admission of the government.

[Richard Gerger, *Vicarious Admissions by Agents of the Government: Defining the Scope of Admissibility in Criminal Cases,* 59 *B.U. L.Rev.* 400, 416–17 (1979) (footnotes omitted).]

Aside from *Santos, Pena, Pandilidis,* and *Kampiles*—none of which implicate clear governmental reliance on an agent's statements in the form of an affidavit to a judge—the Court cites no precedents to support its skepticism about the holding in *Morgan* other than six federal cases, *ante* at 156–57, 784 *A.*2d at 1256, that merely stand for the uncontested proposition that an informant's hearsay statements ordinarily are inadmissible at trial.

The Court's cautious reliance on outdated and distinguishable precedents, such as *Santos,* overlooks the more recent criticism of the *Santos* doctrine. As noted in *Federal Practice and Procedure,* "given the clear language of Rule 801(d)(2)(D), one could certainly question whether [*Santos* and related cases] continue to be good law." 30B Michael H. Graham, *Federal Practice and Procedure*

§ 7023 (Interim ed.2000). *See also* Edward J. Imwinkelried, *Of Evidence and Equal Protection: The Unconstitutionality of Excluding Government Agents' Statements Offered as Vicarious Admissions Against the Prosecution*, 71 *Minn. L.Rev.* 269, 309 (1986) (criticizing the *Santos* doctrine and stating that "government agents are interested in the outcome of prosecutions on which they have worked" and that "[t]he argument based on a government agents' historical inability to bind the sovereign is as flawed as the theory that government agents are disinterested"); Randolph N. Jonakait, *The Supreme Court, Plain Meaning, and the Changed Rules of Evidence*, 68 *Tex. L.Rev.* 745, 775–76 (1990) (stating that "[a]lthough the Rules' drafters were silent on the *Santos* doctrine, the literal words of Rule 801(d)(2)(D) classify the statements of Government employees as vicarious admissions," and that "[u]nder the plain-meaning standard, if the Government is a party, then a criminal defendant may introduce the relevant statements of the Government's agents or servants. Normal usage of language calls the Government a party in a criminal case, and the Rules clearly contemplate this labelling"); Randolph N. Jonakait, *Biased Evidence Rules: A Framework for Judicial Analysis and Reform*, 1992 *Utah L.Rev.* 67, 79 (1992) ("The *Santos* court's interpretation must be changed. Even if there is merit in the logic of *Santos*, the controlling factor is that the applicable rule is facially neutral. The text of Rule 801(d)(2)(D) contains no intimation of this bias towards the government.")(footnote omitted); Irving Younger, *Sovereign Admissions: A Comment on United States v. Santos*, 43 *N.Y.U. L.Rev.* 108, 115 (1968) ("In short, *Santos* immunizes the sovereign in criminal cases from application of the admissions exception (and perhaps all exceptions) to the hearsay rule. The decision is at war with the most deeply rooted of common-law traditions.").

Moreover, the more recent federal cases demonstrate no hesitation in concluding, consistent with *Morgan* and contrary to the *Santos* line of cases, that the government is a party-opponent in a criminal case for purposes of Federal Evidence Rule 801(d). *See, e.g., United States v. Branham*, 97 *F.3d* 835, 850 (6th Cir.1996)

(noting that "[t]he government concedes that Rule 801(d)(2)(D) contemplates that the federal government is a party-opponent of the defendant in a criminal case, *see United States v. Morgan,* 581 *F.*2d 933, 937 n. 10 (D.C.Cir.1978), but argues, nonetheless, that the conversations ... were not within the scope of the agency ... We disagree").

In *United States v. GAF Corp.,* 928 *F.*2d 1253 (2d Cir.1991), defendants appealed their convictions of conspiring to violate federal securities and anti-fraud laws based on their allegedly manipulative purchases of Union Carbide stock on October 29 and 30, 1986. Defendants' chief contention on appeal was that the trial court erred in excluding from evidence the government's *original* bill of particulars, subsequently superceded, that indicated that Union Carbide stock trades in November 1986 were effected by Jeffries & Company rather than defendants and that the government originally believed those trades were related to the October trades that were the basis for defendants' convictions. The Second Circuit—*the same court that decided Santos*—reversed defendants' convictions and held that the original bill of particulars constituted a party admission that was admissible pursuant to Federal Rules of Evidence 801(d)(2). In support of its holding, the court referred to its recent suggestion "that affidavits filed in furtherance of an application for the installation of an electronic monitor and a subsequent search may constitute admissions of a party-opponent, and be used as such against the government by a criminal defendant." *Id.* at 1260 (citing *United States v. Ramirez,* 894 *F.*2d 565, 570 (2d Cir.1990)). The Court explained the rationale for its holding:

> Although the government is not bound by what it previously has claimed its proof will show any more than a party which amends its complaint is bound by its prior claims, the jury is at least entitled to know that the government at one time believed, and stated, that its proof established something different from what it currently claims. Confidence in the justice system cannot be affirmed if any party is free, wholly without explanation, to make a fundamental change in its version of the facts between trials, and then conceal this change from the final trier of the facts.

[*Id.* at 1260.]

*See also United States v. American Tel. & Telegraph Co.*, 498 *F.Supp.* 353, 356–58 (D.D.C.1980) (holding, in telephone antitrust action, that statements by officials of executive agencies constitute admissions by a party-opponent pursuant to Federal Rule of Evidence 801(d)(2) and stating: "Were the Court to accept the government's reasoning, all such [large] organizations would effectively have to be exempted from the purview of the rule on party-opponent admissions. The unambiguous language of Rule 801(d)(2) clearly does not contemplate such a result."); *United States v. Bakshinian*, 65 *F.Supp.*2d 1104, 1105–06 (D.Cal.1999) (citing *United States v. Morgan* with approval, and holding that closing argument by federal prosecutor in related prosecution constitutes statement by party-opponent for purposes of Federal Rule of Evidence 801(d)(2)); *Freeland v. United States*, 631 *A.*2d 1186, 1192–94 (D.C.App.1993) (citing *United States v. Morgan* with approval, reversing defendant's second-degree murder conviction, and holding that trial court erred in excluding from evidence in murder prosecution in District of Columbia, prosecuted by U.S. Attorney for the District, pleading filed by U.S. Attorney for the Eastern District of Virginia in a related proceeding in that court that was exculpatory of defendant, and holding that such pleading constituted admission by party-opponent pursuant to Federal Rule of Evidence 801(d)(2)).

Citing no supportive authority, the Court concludes that because the informant's statements to Officer Crosby were made in late July and early August 1994, a few days before the search warrant was executed on August 5, 1994, and less than four months prior to defendant's indictment on December 1, 1994, the informant's statements should be excluded because they were made in the investigative rather than the prosecutorial stage of the proceeding. Apart from the lack of any authority to support that proposition, it falls of its own weight. Assuming that the informant's statements to Crosby are hearsay, the only reason they would be excluded from evidence in a severed trial is because the State would be deprived of the opportunity to cross-examine the informant and test his credibility. But the State has no need

of cross-examination in this context: it already has vouched for the informant's credibility by relying heavily on his statements about buying drugs from Spence in Crosby's search warrant affidavit. Moreover, the State is not bound by the informant's statements. It is free to contradict them, although nothing in this record remotely suggests that the State doubts their veracity. The State could even produce the informant, a request made by defendant but rejected by the courts below.

The Court also implies, *ante* at 158–59, 784 *A*.2d at 1257, that even if the denial of severance was error and the informant's statements admissible, the error was harmless because the informants "other" statements were inculpatory of Brown. That suggestion misreads the record. Although Officer Crosby's affidavit states that both defendants were selling drugs from the apartment, the affidavit includes not one word of support for the assertion regarding defendant Brown. The informant described Spence to Crosby, not Brown. The informant bought drugs from Spence, never from Brown. Officer Crosby requested a warrant to search the apartment and Spence—not Brown—based on his belief that Spence was selling drugs. The fair reading of this record is that the case was a credibility contest between Spence and Brown concerning ownership of the marijuana in the second-floor dresser. If the jury in a severed trial had known that a police informant had twice purchased marijuana from Spence, which led to the search of the apartment, it might have entertained a reasonable doubt about whether the marijuana in the dresser belonged to Brown. As Justice Handler observed in *State v. White*, 158 *N.J.* 230, 729 *A*.2d 31 (1999), "[w]here we cannot be certain that introduction of defendant—exculpatory material would not have altered the outcome, we 'should not speculate.' " *Id.* at 248, 729 *A*.2d 31 (quoting *State v. Norman*, 151 *N.J.* 5, 41, 697 *A*.2d 511 (1997) (Stein, J., dissenting)).[1]

---

[1] In my view, an added reason that the informant's statements to Officer Crosby would have been admissible in a separate trial against Brown—although not an issue requiring resolution in this appeal—is that they were not solely

## III

In the grand scheme, this may seem like a relatively insignificant drug case. But it implicates a significant and enduring principle. All defendants, innocent or guilty, deserve a fair trial. For Violet Brown, a fair trial meant a severed trial, one in which she could introduce evidence of Sharon Spence's drug sales to the

---

"offered in evidence to prove the truth of the matter asserted." *N.J.R.E.* 801(c). It is well-settled that "where statements are offered not for the truthfulness of their contents, but only to show that they were in fact made and that the listener took certain action as a result thereof, the statements are not inadmissible hearsay." *Spragg, supra,* 293 *N.J.Super.* at 56, 679 *A.2d* 685 (citations omitted). Here, the informant's statement that he/she had twice purchased marijuana from Spence would have been relevant in a severed trial not simply for the truth of that fact, but also to show that the police relied on those statements, true or not, in applying for a warrant to search Spence's apartment. Limited to that purpose, the statements would have been exculpatory insofar as they would have suggested to the jury that the police did not suspect that Brown possessed marijuana when they searched the apartment, and they would not have been hearsay. *See, e.g., Woods v. City of Chicago,* 234 *F.3d* 979, 986 (7th Cir.2000) (finding statements in arrest report admissible "not for their truth, but to show the effect that the statements had on the officers"); *United States v. Castro–Lara,* 970 *F.2d* 976, 981 (1st Cir.1992) (finding testimony respecting informant's tip not hearsay because evidence "provided the jury with helpful background—table-setting information not only explaining why government agents were at the airstrip but also putting their actions into context"); *United States v. Love,* 767 *F.2d* 1052, 1063 (4th Cir.1985) (noting that "an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken"); *United States v. Robles,* 814 *F.Supp.* 1233, 1242 (E.D.Pa.1993) (finding that witness statements regarding informant's tip "were not hearsay declarations because they were not introduced for the purpose of establishing the truth of the matter asserted in the statements, but rather, for the purpose of explaining the conduct of the Government agents").

Certainly, in a severed trial the truth of the informant's statement—that Spence sold drugs to the informant—would have been relevant. However, the fact that the informant's statement is amenable to both hearsay and non-hearsay uses does not render it inadmissible. Trial courts routinely instruct juries in such circumstances to consider the statements only for their non-hearsay uses. See, *e.g., Maristany, supra,* 133 *N.J.* at 309, 627 *A.2d* 1066 (citing *State v. Marshall,* 123 *N.J.* 1, 132–33, 586 *A.2d* 85 (1991); R. Biunno, *Current New Jersey Rules of Evidence,* comment 3 on *Evid. R.* 63 (1992)) ("When a statement is admitted for a purpose other than to prove the truth of the matter asserted, the court should instruct the jury concerning the limited use of that evidence.").

State's informant without concern about Spence's assertion of a hearsay objection. Her lawyer moved for a severance, argued strenuously to persuade the trial court that Brown could not have a fair trial without one, but the motion was denied.

Violet Brown did not receive a fair trial. She was entitled in a separate trial to introduce evidence of the informant's statements to Officer Crosby concerning prior purchases of marijuana from Spence. Because the trial court did not appreciate that those statements would have been admissible, it erroneously denied Brown's motion to sever.

Her motion for severance should have been granted in order that she could establish, free from any hearsay objection by Sharon Spence, that the informant on whom the police relied to obtain a search warrant informed Officer Crosby that he had twice purchased marijuana from Spence and never from Brown. If the jury had been allowed to hear that evidence, it very well might have entertained a reasonable doubt about who possessed the marijuana in the second-floor dresser and acquitted Brown of the offenses with which she was charged. I would reverse her convictions and remand for a new trial.

*For affirmance*—Chief Justice PORITZ and Justices COLEMAN, VERNIERO, LAVECCHIA—4.

*For reversal*—Justices STEIN, LONG and ZAZZALI—3.