JULIO CESTERO, INDIVIDUALLY AND *PER QUOD*, PLAIN-
TIFF-APPELLANT, AND CELIA CESTERO, *ETC.*, *ET AL.*,
PLAINTIFFS, v. JENNIE FERRARA, DEFENDANT-RE-
SPONDENT.

Argued January 12, 1971—Decided February 22, 1971.

*Mr. Vincent D. Enright, Jr.* argued the cause for appellant (*Messrs. Harth & Enright,* attorneys).

*Mr. Adrian I. Karp* argued the cause for respondent (*Messrs. Van Riper, Belmont & Villanueva,* attorneys).

The opinion of the Court was delivered by

FRANCIS, J. This action arises out of an automobile collision that occurred in Fairfield, N. J. on December 12, 1966, at approximately 10:30 P.M. at a highway intersection where the movement of vehicles was controlled by traffic lights. Plaintiff Julio Cestero, the driver of one car, and members of his family who were passengers in his car sued defendant Jennie Ferrara, the driver of the other car, to recover compensation on account of property damage, personal injuries and expenses suffered by them in the accident. Defendant Jennie Ferrara counterclaimed against Mr. Cestero seeking a recovery for personal injuries, medical expenses and other

losses, including property damage to her car. After trial, the jury brought in a verdict of $60,000 in favor of defendant Ferrara against the plaintiff Cestero on the counterclaim and a verdict of no cause of action on the claims of the various plaintiffs. Following denial of a motion for a new trial, Cestero sought a review in the Appellate Division where the judgments entered on the verdicts were affirmed. *Cestero v. Ferrara,* 110 *N. J. Super.* 264 (App. Div. 1970). We granted plaintiff Cestero's petition for certification. 56 *N. J.* 476 (1970).

A number of grounds for reversal were raised in the Appellate Division. They were disposed of adversely to Cestero in the opinion cited above, and although we agree with the affirmance, we find it advisable to deal somewhat differently with an evidence problem which constituted a major basis for the appeal.

The liability issue in the case was a relatively simple one. As already noted, movement of motor vehicles at the intersection in question was controlled by traffic lights. Each driver claimed the light was green as his or her car entered the intersecting street. It seems obvious from the record that the verdict would go to the driver in whose favor the jury decided that basic issue.

The testimony of Mrs. Ferrara and Mr. Cestero was diametrically opposed. Each one claimed the favorable green light; each produced a so-called disinterested witness who agreed with the claim of the party who produced him. During the trial, the record of Mrs. Ferrara's hospitalization and treatment following the accident was received in evidence. Plaintiff objected to the portion thereof which set forth as part of the patient's history her statement as to cause of the accident. The objection claimed that the statement was self-serving and hearsay and should be excluded. The trial court disagreed and admitted the entire record. The criticized portion says:

"Pt. [patient] stopped for red light, started up on green light and got hit * * *."

Some further reference to the facts is necessary to facilitate discussion of the problem. As already noted, the accident took place at approximately 10:30 P.M. on December 12, 1966. Mrs. Ferrara was badly hurt and had to be transported by ambulance to the Mountainside Hospital in Montclair. She was carried into the emergency room at about 11:00 P.M. She testified that she did not remember anything after the accident until she was "in the hospital." Nor could she say how long she was in the hospital before she remembered "anything." In stating the "first thing" she remembered she said "Well, I opened my eyes, and I looked up and * * * saw a doctor in front of me." She started to say, "I says to the doctor * * *," but she was instructed not to tell that. She was in very bad pain when she saw the doctor.

On admission to the emergency room, it was obvious that Mrs. Ferrara was severely injured. The nurse's note says "right leg deformed." Apparently, Dr. Robert Greene, an orthopedist, was called immediately and arrived in a very short time, although the exact time of his appearance was not recorded. The inference is that he was the doctor she saw when she "opened her eyes." His handwritten notes on the chart record his first observations. He found a grossly deformed right femur with "severe pain in any motion of the leg." The leg was "tender over the entire shaft" and there was "gross shortening." The patient had a small laceration of the scalp in the right temporal region.

When the doctor recorded the statement about the accident, he noted further that she was complaining of pain in the right thigh, right shoulder and head; also that she believed "she was unconscious, but has no gross loss of memory other than this." After x-rays of the patient's head, shoulder and right hip were taken and a gross neurological examination made, the doctor felt she could withstand the urgently necessary operation on her femur. Accordingly, she was removed to the operating room and the surgery performed. The hospital record notes that she was unable to sign the

authorization for the surgery before being taken to the operating room.

 It has long been the rule in New Jersey that the declarations of a patient as to his condition, symptoms and feelings made to his physician for the purpose of diagnosis and treatment are admissible in evidence as an exception to the hearsay rule. *Bober v. Independent Plating Corp.*, 28 *N. J.* 160, 170 (1958). More recently the exception has been codified in our Rules of Evidence, *Rule* 63(12)(b). As *Bober* indicated, that departure from the hearsay rule has been approved because the law recognizes that such statements spring from natural reflexes and are made at a time when the desire for relief furnishes an impelling incentive for truth telling. But ordinarily statements as to the *cause* of the symptoms or conditions are not removed from the hearsay objection because the same compelling motivation may not be present. Such statements may be the product of ulterior motives. *Bober* presents an example of the exceptional circumstances under which statements as to cause may be admitted. 28 *N. J.* at 172; *see also Barrie v. Central R. R. Co. of New Jersey*, 71 *N. J. Super.* 587, 596 (App. Div.), certif. *den.* 37 *N. J.* 87 (1962); *New Jersey Rules of Evidence, Rules* 63(12)(c), 63(32). The hearsay rule is ordinarily applicable to a patient's statements appearing in hospital records, even where the proof qualifies such records for admission in evidence as business records. *State v. Gardner*, 51 *N. J.* 444, 461–462 (1968); *Pinter v. Parsekian*, 92 *N. J. Super.* 392, 394–396 (App. Div. 1966); *New Jersey Rules of Evidence, Rule* 63(13). When the records are otherwise admissible, the usual practice should be excision of the objectionable hearsay, and not exclusion of the entire record.

██ In the present case, even though Mrs. Ferrara's statement as to the manner in which the automobile collision occurred does not appear to have been necessary for purposes of medical treatment, it qualifies for admission under another well recognized exception to the prohibition against hearsay evidence.

■ Statements and declarations, although self-serving in character, are admissible when they constitute part of the *res gestae*. In the early days of the common law, spontaneous statements, declarations or ejaculations which were made by a person involved in an accident so contemporaneously or concomitantly with the mishap as to explain or characterize it, were treated as part of the event itself and therefore evidential. *McCormick, Evidence* § 274, p. 585 (1954). But in more recent times the *res gestae* concept has been considerably broadened and the requirement for strict contemporaneity has been modified. Now evidence of declarations made under the immediate influence of the principal transaction or occurrence is admissible. They need not be concomitant or coincident with the exciting stimulus; they may be subsequent providing that in the light of all the circumstances it may be said reasonably that the exciting influence had not lost its sway or had not been dissipated in the interval.

Some discretion must be vested in the trial judge with respect to the propriety of receiving in evidence post-event declarations. It must be remembered that they derive their basic credibility not from the veracity of the witness but rather from their relation to the event out of which they emanate. If the circumstances reveal that there was sufficient time to contrive or devise a self-serving falsehood, admissibility should be denied. It must appear that the statements were unpremeditated emanations of the event and so connected with it as to preclude the idea that they were products of calculated policy. At bottom, the principle rests on the recognized common experience of mankind that:

[U]nder certain external circumstances of physical shock, a stress * * * may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the

utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him * * *. 6 *Wigmore, Evidence* § 1747, p. 135 (3d ed 1940).

See also *Demeter v. Rosenberg,* 114 *N. J. L.* 55 (Sup. Ct. 1934) ; *Travelers' Ins. Co. v. Sheppard,* 85 *Ga.* 751, 12 *S. E.* 18 (1890) ; 6 *Wigmore, Evidence, supra,* § 1750, p. 142.

Our Rules of Evidence have undertaken to codify this broader *res gestae* principle. *Rule* 63(4) provides:

A statement is admissible if it was made (a) while the declarant was perceiving an event or condition which the statement narrates, describes or explains, or (b) while the declarant was under the stress of a nervous excitement caused by such perception, in reasonable proximity to the event, and without opportunity to deliberate or fabricate.

Although the explication might be somewhat more definitive in scope, there is no doubt that it was intended to apply to situations like that now before us.

In the present case we are satisfied that defendant Ferrara's statement about the accident, as it appeared in the hospital record, was properly admitted in evidence. On the basis of her testimony, it was made while she was under the shock and stress of the accident and it was sufficiently proximate in point of time to justify the inference that it was not the product of reasoned reflection. The totality of the circumstances was such that a jury might well find that her terse version of the accident, uttered while she was in shock and severe pain and very soon after her first recollection of the accident, represented an unpremeditated emanation of the event and not the calculated product of a self-serving interest.

It is true that the exact elapsed time between the accident and Mrs. Ferrara's recorded description of it was not stated; nor does it appear how long she had been in the emergency room before she "opened her eyes" and saw the doctor "in front of her." It does not make a significant difference

whether she had no memory of the accident in the interval because she was unconscious or because she was in shock until she first became aware of the presence of the doctor. The fact that her utterance about the accident was made very shortly after her return to reality and while she was in severe pain is the important circumstance which satisfies the test of admissibility. *Slayback Van Order Co. v. Eiben,* 115 *N. J. L.* 17, 21 (Sup. Ct. 1935). A trial court is not concerned with the ultimate probative force of the utterance. That evaluation must be made by the jury. The legal rule which binds the trial judge respecting admissibility is met when the circumstances reasonably warrant the inference that the statement was made as an uncontrolled response to the shock of the event before reasoned reflection could have stimulated a self-serving response.

An example of application of the principle described appears in *Demeter v. Rosenberg, supra,* 114 *N. J. L.* 55. There, decedent, a second floor tenant of a tenement house was found by a first floor tenant in an unconscious state at the bottom of the staircase leading from the second to the first floor. The first floor tenant had been awakened from sleep by a thumping noise outside his door. The injured woman was carried into that tenant's apartment where she remained unconscious until her daughter, who had been summoned from her house, arrived about an hour and a half later. On seeing her mother, the daughter screamed "Oh, mama, what happened to you?" The mother who had regained consciousness momentarily said "I missed my step and fell down the stairs." She then lapsed back into unconsciousness and remained in that state until she was taken to the hospital. The former Supreme Court sustained the admission of the utterance saying there was nothing to indicate that the injured woman had time to reflect and give utterance to a calculated self-serving declaration. See *McGowan v. Peter Doelger Brewing Co.,* 10 *N. J. Super.* 276, 280 (App. Div. 1950); *Slayback Van Order Co. v. Eiben, supra,* 115 *N. J. L.* at 20–21; *Murphy v. George Brown & Co.,* 91 *N. J. L.* 412, 416 (Sup. Ct. 1918).

Many such rulings on similar factual situations are to be found throughout the country. See *Lampe v. United States*, 97 *U. S. App. D. C.* 160, 229 *F.* 2d 43 (1956), *cert. den.* 359 *U. S.* 929, 79 *S. Ct.* 612, 3 *L. Ed.* 2d 631 (1959); *People v. Costa*, 40 *Cal.* 2d 160, 252 *P.* 2d 1 (1953); *Foster v. Thornton*, 125 *Fla.* 699, 170 *So.* 459 (1936); *Nawn v. Boston & Me. R. R. Co.*, 77 *N. H.* 299, 91 *A.* 181 (1914); *Commonwealth v. Logan*, 361 *Pa.* 186, 63 *A.* 2d 28 (1949); *Commonwealth v. Puntario*, 271 *Pa.* 501, 115 *A.* 831 (1922); *McHenry v. Short*, 29 *Wash.* 2d 263, 186 *P.* 2d 900 (1947); *State v. Ripley*, 32 *Wash.* 182, 72 *P.* 1036 (1903); *Kressin v. Chicago & N.W. Ry. Co.*, 194 *Wis.* 480, 215 *N. W.* 908 (1927).

The judgment is affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—None.