RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5232-14T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

M.A.S.,

 Defendant-Appellant.

________________________________________________________________

 Submitted February 14, 2017 – Decided July 6, 2017

 Before Judges Koblitz, Rothstadt and
 Sumners.

 On appeal from Superior Court of New Jersey,
 Law Division, Gloucester County, Indictment
 No. 11-11-1183.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Jaime B. Herrera, Assistant
 Deputy Public Defender, of counsel and on
 the briefs).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Jeffrey P.
 Mongiello, Deputy Attorney General, of
 counsel and on the brief).

PER CURIAM
 Defendant M.A.S.1 appeals from a judgment of conviction

entered by the Law Division after a jury convicted him of

committing two counts of second-degree of sexual assault upon

his sixteen-year-old niece, D.S. The court sentenced him to an

aggregate term of eight-years, subject to the No Early Release

Act, N.J.S.A. 2C:43-7.2, Megan's Law restrictions, N.J.S.A.

2C:7-1 to -23, and parole supervision for life, N.J.S.A. 2C:43-

6.4. On appeal, defendant argues that his conviction should be

vacated because the trial court improperly permitted a Sexual

Assault Nurse Examiner (SANE) to testify to statements made by

D.S. during the nurse's examination of the young victim in which

D.S. identified defendant as her assailant and provided details

of her assault. We agree that portions of the nurse's testimony

should not have been admitted, but we affirm, finding the error

to be harmless.

 In 2011, D.S. disclosed to a guidance counselor at school

that defendant had sexually assaulted her. The guidance

counselor contacted the police who investigated and arrested

defendant. On November 30, 2011, a grand jury returned an

indictment charging defendant with second-degree sexual assault

of a relative between the ages of sixteen and eighteen, N.J.S.A.

1
 We use initials to preserve the confidentiality of the
victim. R. 1:38-3(c)(12).

 2 A-5232-14T1
2C:14-2(c)(3)(a) (count one); second-degree sexual assault by

force or coercion without serious injury, N.J.S.A. 2C:14-2(c)(1)

(count two); and fourth-degree criminal sexual contact, N.J.S.A.

2C:14-3(b) (count three).

 At defendant's ensuing trial, D.S., her sister, the

guidance counselor, and the SANE nurse testified on behalf of

the State. Defendant testified on his own behalf.

 According to the testimony presented by the State, before

disclosing the assault to her guidance counselor, D.S. disclosed

defendant's conduct to others. At the time of the assault, D.S.

lived with her grandmother, older brother, and three younger

sisters, including her sister Da.S., who was two years younger

than her. Defendant, who was D.S.'s father's brother,

periodically lived in the home as well, at which time he slept

in the living room.

 According to D.S., on February 10, 2011, defendant

assaulted her while her sisters and their grandmother were home.

D.S. stated that she went to sleep in her bedroom, where she

slept alone, and awoke around midnight to someone touching her.

During the course of the attack, D.S. was subject to digital

penetration and defendant's unsuccessful attempt to penetrate

her with his penis. While the attack was underway, D.S. began

"[s]haking in fear," at which point, defendant stopped, "told

 3 A-5232-14T1
[her] not to tell anybody," and left the room. D.S. estimated

the incident lasted ten minutes.

 At first, D.S. did not know who was attacking her because

she was laying on her side, facing a wall, although she assumed

it was defendant. She was able to confirm it was defendant when

he spoke to her just prior to leaving the room, at which point

she recognized his voice.

 After defendant left, D.S. went to her sisters' room and

woke Da.S. At trial, Da.S. stated D.S. was visibly upset, and

D.S. "told [her] about what happened between her and [their]

uncle," how "he was inappropriately touching her." In response,

Da.S. called a different uncle and aunt to tell them what had

occurred. She also crawled out of her bedroom window and went

to her parents' house nearby, to inform them of defendant's

conduct. Although the grandmother was in the house, D.S. stated

she did not wake her regarding the incident because she thought

she would "take his side." D.S. ultimately wrote a note

explaining what happened, which Da.S. gave to their grandmother

the next morning.

 The next day at school, D.S. confided in a friend regarding

the events of the previous night. The friend told her she

should speak to the guidance counselor, which she did. The

guidance counselor testified D.S. was "visibly upset, . . .

 4 A-5232-14T1
withdrawn and . . . crying." D.S. eventually disclosed the

incident, and the guidance counselor contacted the police, who

then came to the school to speak with D.S. After speaking with

police, the guidance counselor drove D.S. to the police station,

where she was met by her grandmother. After giving a statement

to police, the grandmother drove D.S. to the hospital where D.S.

was examined by the SANE nurse.

 At trial, the nurse explained the purpose of having SANE

nurses in the hospital is so "[e]very patient that . . . comes

in with sexual assault has the same opportunity to have

specialized victim-centered care." She stated that she explains

to her patients the purpose of the examination, takes an oral

history to determine how best to treat the patient, conducts a

"head-to-toe assessment [to] make sure the patient gets treated

properly," and then conducts a "detailed genital examination."

The nurse testified that her examination of D.S. revealed that

"an injury did take place inside the vagina within a recent

amount of time."

 When the prosecutor began to question the nurse about the

oral history provided to her by D.S., defense counsel objected

 5 A-5232-14T1
on hearsay grounds.2 The court allowed the testimony, relying

upon N.J.R.E. 803(c)(4): "Statements for purposes of medical

diagnosis or treatment." The nurse then testified as to D.S.'s

description of the incident, including D.S.'s identification of

defendant as her assailant, making sure that it was clear that

she was quoting D.S's statement to her. The nurse's recounting

of D.S's statement essentially mirrored D.S.'s testimony, except

that D.S. indicated to the nurse that defendant asked her if she

wanted him to "leave her alone." D.S. nodded her head yes,

according to the nurse, and defendant "kissed her thigh and told

her . . . not to tell anyone and left the room." Additionally,

the nurse testified that D.S. stated that earlier in the night,

prior to the incident, defendant asked her if she wanted

"something to help her sleep" and that her uncle "kept coming

down to her room . . . earlier in the evening." On cross-

examination, defense counsel asked if these details were

"medically relevant," to which the nurse responded, "[n]ot

necessarily."

2
 It is not clear whether defense counsel even objected. He
stated, "Judge, I don't know. I think I might have to object."
And, when the prosecutor and judge identified the rule through
which the State sought the testimony's admission, defense
counsel said "okay." The judge allowed the testimony. For our
purposes, we assume an objection was interposed and not
withdrawn.

 6 A-5232-14T1
 During his closing, defense counsel focused on

inconsistencies in D.S.'s testimony and argued D.S. presented a

"spotty and frankly inconsistent story," and suffered a

"Pinocchio problem." Among the inconsistencies he referred to

was a statement made by D.S. to the SANE nurse about whether she

was subjected to any type of penetration. Counsel also

explained to the jury that the nurse did what she was supposed

to do by "accept[ing D.S's story] as presented." He also relied

upon the nurse's testimony about her attempt to examine D.S.

with a speculum that caused D.S. discomfort and pain and asked

the jurors to compare that fact with D.S.'s testimony that upon

penetration by defendant she did not feel any pain. Counsel

also attempted to create an issue as to the assailant's identity

by stating that D.S. did not see the perpetrator, but only

identified him by the sound of his voice, and noted defendant

testified that D.S.'s brother and cousin arrived home at 12:30

a.m., then stating, "I'm not saying the brother did anything.

I'm not saying the cousin did anything. I'm saying based on

what we know right now, we just don't know."

 The prosecutor's closing focused on the nurse's testimony

only to the extent that D.S. made statements to her about

penetration and the evidence of injury to D.S.'s vagina. The

prosecutor explained to the jury that the nurse could not tell

 7 A-5232-14T1
them what happened to D.S., only that the "injury that she

discovered . . . is consistent with what D.S. told her." The

prosecutor did not mention statements recounted by the nurse

that may have been extraneous to evaluation and treatment,

including D.S.'s statement about defendant being the

perpetrator. Defense counsel did not object to the prosecutor's

closing argument at trial.

 On appeal, defendant argues:

 THE TRIAL COURT COMMITTED
 REVERSIBLE ERROR IN ALLOWING THE
 SEXUAL ASSAULT NURSE EXAMINER TO
 PRESENT DETAILED TESTIMONY
 REGARDING THE ALLEGED ASSAULT,
 WHICH WAS HEARSAY UNDER THE
 MEDICAL EXCEPTION RULE, AND
 IMPROPERLY IDENTIFIED THE ALLEGED
 ASSAILANT. THE PREJUDICE TO
 DEFENDANT WAS COMPOUNDED WHEN THE
 PROSECUTOR USED THIS TESTIMONY IN
 SUMMATION AS SUBSTANTIVE EVIDENCE
 TO ENHANCE D.S.'S CREDIBILITY.
 (PARTIALLY RAISED BELOW).

 Defendant contends that since the nurse's examination was

for "evidence-gathering purposes" and "not for the purpose of

medical diagnosis or treatment," D.S.'s hearsay statements were

not admissible under N.J.R.E. 803(c)(4). He relies upon the

fact that the nurse was trained in the process of collecting and

maintaining evidence and during her "explanation of the

 8 A-5232-14T1
examination of a patient, care and treatment were not

mentioned."

 Defendant also avers that "even if this court were to

determine that [the nurse] examined D.S. for the purpose of

medical diagnosis or treatment, many of the statements by D.S.

that were repeated [by the nurse] were inadmissible, and

prejudiced defendant." Defendant asserts "[t]his testimony was

harmful to defendant due to the lack of other evidence at

trial," such as "witnesses to the incident."

 "We begin by acknowledging our deferential standard for

reviewing a trial court's evidentiary rulings, which should be

upheld 'absent a showing of an abuse of discretion, i.e., there

has been a clear error of judgment.'" State v. Perry, 225 N.J.

222, 233 (2016) (quoting State v. Brown, 170 N.J. 138, 147

(2001)). An abuse of discretion is "a clear error of judgment"

that is "so wide of the mark that a manifest denial of justice

resulted." State v. J.A.C., 210 N.J. 281, 295 (2012) (quoting

Brown, supra, 170 N.J. at 147). However, appellate review of a

trial court's legal conclusions is plenary. State v. Handy, 206

N.J. 39, 45 (2011).

 Here, the nurse's testimony regarding what D.S. told her

about the attack was hearsay. Hearsay is an out-of-court

statement "offered in evidence to prove the truth of the matter

 9 A-5232-14T1
asserted." N.J.R.E. 801(c). An exception to the prohibition

against hearsay are "[s]tatements made in good faith for

purposes of medical diagnosis or treatment which describe

medical history" or the cause of the declarant's symptoms "to

the extent that the statements are reasonably pertinent to

diagnosis or treatment." N.J.R.E. 803(c)(4).

 "It has long been the rule in New Jersey that the

declarations of a patient as to his condition, symptoms and

feelings made to his physician for the purpose of diagnosis and

treatment are admissible in evidence as an exception to the

hearsay rule." Cestero v. Ferrara, 57 N.J. 497, 501 (1971); see

also Prioleau v. Ky. Fried Chicken, Inc., 434 N.J. Super. 558,

586 (App. Div. 2014), aff'd as modified, 223 N.J. 245 (2015).

This hearsay exception is premised on the notion that "the

declarant is more interested in obtaining a diagnosis and

treatment culminating in a medical recovery than [she] is in

obtaining a favorable medical opinion culminating in a legal

recovery." Biunno, Current N.J. Rules of Evidence, comment on

N.J.R.E. 803(c)(4) (2017) (citing, In re Registrant C.A., 146

N.J. 71, 99 (1996)).

 For the exception to apply, "the patient must have believed

that the statement would enable the doctor to treat," because

"[r]eliability is based on the declarant's belief that a doctor

 10 A-5232-14T1
will properly treat him if the doctor is told the truth

concerning the ailment." State in the Interest of C.A., 201

N.J. Super. 28, 33-34 (App. Div. 1985). Because N.J.R.E.

803(c)(4) is based upon a presumed "treatment motive," a

statement by a declarant who "is unaware that his or her

statements will enable a physician to make a diagnosis and

administer treatment" lacks the requisite degree of

trustworthiness to qualify under this exception. R.S. v.

Knighton, 125 N.J. 79, 87-88 (1991). For that reason, hearsay

obtained during evidence gathering and medical consultations

conducted purely in preparation for litigation remains

inadmissible. C.A., supra, 201 N.J. Super. at 33.

 Therefore, in order to be admissible, the patient's

statements must be "made in good faith for purposes of medical

diagnosis or treatment." State v. Pillar, 359 N.J. Super. 249,

289 (App. Div.) (quoting N.J.R.E. 803(c)(4)), certif. denied,

177 N.J. 572 (2003). They must also "describe medical history,

or past or present symptoms, pain, or sensations, or the

inception or general character of the cause or external source

thereof to the extent that the statements are reasonably

pertinent to diagnosis or treatment." Ibid. D.S.'s statements

to the nurse identifying defendant or otherwise setting forth

the details of her assault that were "not relevant to [D.S.'s]

 11 A-5232-14T1
. . . treatment" were not admissible. State v. McBride, 213

N.J. Super. 255, 273 (App. Div. 1986) (first citing Cestero,

supra, 57 N.J. at 501-02; and then citing C.A., supra, 201 N.J.

Super. at 33-34).

 The trial court's error here, however, was harmless. An

error at trial will be considered reversible only if it is

"clearly capable of producing an unjust result." R. 2:10-2.

"The harmless error standard 'requires that there be some degree

of possibility that [the error] led to an unjust result. The

possibility must be real, one sufficient to raise a reasonable

doubt as to whether [it] led the jury to a verdict it otherwise

might not have reached.'" State v. Lazo, 209 N.J. 9, 26 (2012)

(alterations in original) (quoting State v. R.B., 183 N.J. 308,

330 (2005)).

 Applying that standard, we observe that prior to the nurse

testifying, D.S. testified about her identification of defendant

as her assailant, the details of her assault, and how she shared

that information with others before speaking to the nurse. The

other individuals included her sister and guidance counselor,

who also testified as to what D.S. told them before she spoke to

the nurse. Defendant has not established that the nurse's

repetition of the same information caused him any prejudice. To

the contrary, defense counsel relied on the nurse's testimony

 12 A-5232-14T1
about what D.S. said to argue that D.S. gave several

inconsistent statements and thus was not worthy of belief.

 Turning next to defendant's contention that he "was

deprived of a fair trial by the [State's] improper use of" the

nurse's testimony during summation, we note that defendant did

not object to the prosecutor's closing statement at trial.

Because there was no objection at trial, we review the issue for

plain error. R. 2:10-2. We find none. The prosecutor's

closing discussed the nurse's testimony only to the extent that

it was pertinent to the issue of whether or not there was injury

to the vagina indicative of penetration and whether D.S. gave

inconsistent statements, as rebuttal to the defense's summation.

 Affirmed.

 13 A-5232-14T1