**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0485-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANTHONY IRIZARRY, a/k/a
TONE, ANTHONY IRAZZARRY,
and ANTHONY IRRIZARRY,

     Defendant-Appellant.

_____

Submitted February 24, 2020 – Decided March 20, 2020

Before Judges Sabatino and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 12-08-0619.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael A. Priarone, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

This case arises out of an incident in which defendant Anthony Irizarry engaged in sexual activity with an adult woman, P.R.[1] The State alleged defendant threatened P.R. at knifepoint, drove her to a desolate location, and forced her to engage in oral and anal sexual acts. P.R. was unable to identify her assailant, but a specimen obtained during an examination of P.R. matched defendant's DNA to that found on her. Defendant, who testified at trial in his own defense, asserted that P.R. had offered to have sex with him in exchange for crack cocaine, and that their ensuing sexual relations were consensual.

Defendant has been tried twice for the sexual assault of P.R. Following a nine-day trial, a jury acquitted defendant of kidnapping, terroristic threats, and various weapons charges but found him guilty of aggravated sexual assault and aggravated criminal sexual contact. Defendant was sentenced to an extended custodial term of thirty-five years with periods of parole ineligibility and parole supervision following his release from prison, as prescribed by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. On direct appeal, we reversed and remanded for a new trial because defendant's constitutional right to remain silent post-arrest was violated. State v. Irizarry, Docket No. A-1518-14 (App. Div. June 12, 2017) (slip op. at 23-25). The State's petition for certification was

---

[1] We use initials to protect the privacy of the victim. R. 1:38-3(c)(12).

denied, State v. Irizarry, 213 N.J. 527 (2017), as was defendant's cross-petition for certification. State v. Irizarry, 213 N.J. 540 (2017).

Defendant was retried in 2018. Prior to the retrial, defendant moved to bar the "while armed" aspects of both charges in light of his acquittal of the weapons charges at the first trial. The court denied defendant's motion but reserved on whether the charges might be amended to include the allegation that defendant was "armed with a knife or some object that in the manner which it was fashioned appeared to be a weapon or a knife." The parties stipulated that defendant's DNA was found on P.R.

A second jury convicted defendant of second-degree sexual assault by physical force, N.J.S.A. 2C:14-2(c)(1), and fourth-degree criminal sexual contact by physical force/coercion, N.J.S.A. 2C:14-3(b). Following merger, defendant was sentenced as a persistent offender to an extended twenty-year NERA term. He was also sentenced to parole supervision for life, N.J.S.A. 2C:43-6.4, and ordered to comply with the registration requirements imposed by Megan's Law, N.J.S.A. 2C:7-1 to -23.

Defendant now appeals his second conviction and sentence, contending there were errors at the second trial that warranted a reversal of his conviction

and his sentence is excessive. For the reasons that follow, we affirm his conviction and sentence.

I.

We derive the facts from the testimony and evidence presented at the second trial. The jury heard testimony from Detective Edward Valentin of the City of Passaic Police Department; Massiel De La Cruz, a Sexual Assault Forensic Examiner (SAFE); P.R.; and defendant.

Valentin testified that while working on May 20, 2011, he was called to Mountainside Hospital to interview an alleged victim of sexual assault. After Valentin arrived at the hospital, he met with the SAFE "nurse," De La Cruz, who had just examined P.R. During trial, the following colloquy took place:

> Q. Did anything happen when you spoke to the nurse?
> A. No. They[2] just said that she was a victim of a sexual assault.

Defense counsel objected immediately. The court then issued two limiting instructions to the jury. However, defense counsel wanted to be heard further; the court excused the jury. Defense counsel moved for a mistrial "[b]ecause now, according to [Valentin's] testimony the nurse has given the [j]ury the

_____

[2] Defendant contends Valentin's use of the word "they" refers to both De La Cruz and the sexual assault victim advocate.

information that there was a sexual assault." The court denied the motion and instead issued a curative instruction stating in relevant part, "[De La Cruz] was not expressing an opinion, nor can she express an opinion."

Next the State called De La Cruz. De La Cruz testified that in 2011 she was employed as an independent contractor, working as a SAFE for the Essex County Prosecutor's Office. She explained that a SAFE differs from a Sexual Assault Nurse Examiner (SANE) because she is a physician assistant as opposed to a nurse. She then explained her educational background and qualifications. The court qualified De La Cruz as an expert in the field of sexual assault forensic examination. The court informed the jury that "an expert witness . . . may give her opinion as to any matter in which she is versed which is material to the case."[3]

De La Cruz testified she was called to Mountainside Hospital to perform an examination on P.R. There, she conducted P.R.'s examination in Spanish because P.R. does not speak English. She also explained that there was an "advocate" in the room to "help the patient in case . . . they need representation."

During her testimony, De La Cruz recounted various statements P.R. made to her, including the cause of her injuries, the ethnicity of her attacker, what

_____

[3] This conflicted with the court's earlier instruction and was not clarified at trial.

occurred during the attack, and that she was in fear for her life. Defense counsel objected to these statements. The court overruled defendant's objections, explaining that the statements were admissible under N.J.R.E. 803(c)(4) as statements for purposes of medical diagnosis or treatment, because "[t]hese are details a medical person has to have." The court also noted that under N.J.R.E. 803(c)(3), "then existing mental, emotional or physical condition . . . is also an exception."

The State then called P.R. who testified through an interpreter. She stated that on May 20, 2011, she left her home in Passaic at 5:30 a.m. to go to work. As she was walking down Harrison Street, towards the bus stop, she heard a car stop behind her. Suddenly, she was grabbed from behind; when she tried to run away her attacker[4] caught up to her and "told [her] not to move." He then placed a knife[5] to her hip area and stated, "if you move, I'm going to kill you."

---

[4] P.R. never definitively identified defendant as her attacker.

[5] Subsequent to P.R.'s testimony that her assailant was armed with a knife— contrary to the acquittal on that charge in the first trial—the court appropriately reconsidered its decision prior to submitting the case to the jury. It ultimately entered a judgment of acquittal on the "while armed" elements of both counts, submitting only the lesser-included second-degree sexual assault by physical force and fourth-degree criminal sexual contact by physical force/coercion for the jury's consideration.

P.R. stated she was then forced into the front-passenger seat of her attacker's car; the two drove on Route 21, towards Newark, until the attacker parked in "a rural area where there were trees" surrounded by construction equipment. There, while still inside of the car, the attacker made P.R. perform oral sex by grabbing her head and pushing it downward. Then the attacker pulled P.R.'s pants and underwear off and sodomized her.

P.R. testified that after the attacker ejaculated, he gave P.R. a glove to "clean up." The attacker then told P.R. that he was driving her back to Passaic and that she should not contact "the police or anyone else." After arriving in Passaic, the attacker stopped suddenly on Main Street and pushed P.R. out of the car while reiterating not to contact anyone about the rape or else he would kill her.

P.R. stated that she cried as she walked down Main Street until a man asked her if she was alright. She then told the man about the rape. The police were called and soon arrived around 6:00 a.m. In the responding officer's report, he indicated that P.R. stated initially that she was robbed and did not mention being sexually assaulted. Eventually, however, she informed him that she was sexually assaulted. The officer and his partner then drove P.R. to the location where she said the assault took place.

A-0485-18T4

Subsequently, the responding officers transported P.R. to Saint Mary's Hospital. However, she was then driven to Mountainside Hospital because Saint Mary's was unable to perform a sexual assault examination.

On May 24, 2011, P.R. drove with Valentin to where she believed she was assaulted; the address, later ascertained, was 110 Riverside Avenue, Newark. P.R. was later informed by Valentin that security camera footage from 110 Riverside Avenue did not show any cars being parked there on the morning of May 20, 2011.

On cross-examination, defense counsel asked P.R. if her testimony was "different today than it was back in 2014." In response, P.R. stated she would be willing to take a polygraph. Defense counsel requested a curative instruction which the court provided. P.R. later exclaimed that "[p]eople don't believe Hispanics." Defense counsel requested a mistrial. The court provided a curative instruction to this comment later in the trial. P.R. also denied telling the police, initially, that she had been robbed and not sexually assaulted. The State rested following P.R.'s testimony.

Defendant elected to testify. During direct-examination, defendant stated that on the morning of May 20, 2011, he was selling crack cocaine on Passaic Street. Defendant testified that around 5:00 or 5:30 a.m., P.R. approached him

8

and asked if he had drugs, to which defendant responded affirmatively. According to defendant, P.R. then proposed that defendant give her crack cocaine in exchange for sex. Defendant accepted.

Defendant testified that he and P.R. then "walked down Third Street to an alleyway, between Passaic and South" and had unprotected anal sex. Following the encounter, defendant reneged on their agreement and simply walked away without providing P.R. the crack cocaine. Defendant denied placing P.R. into a car.

On cross-examination, the State confronted defendant with his motor vehicle abstract that showed he received a summons for driving with a suspended license on July 21, 2011, two months after the alleged rape. Defense counsel objected and moved for a mistrial because she had not been provided with the motor vehicle abstract prior to the State using it to impeach defendant. However, the court denied the motion and instead issued a curative instruction to the jury.

Also, on cross-examination, the State questioned defendant about certain aspects of his crack cocaine dealing. The questions included how much crack cocaine he possessed and whom he would sell to. No instruction was requested

A-0485-18T4

by defendant regarding his crack cocaine dealing and the court did not provide a limiting instruction.

The jury convicted defendant of second-degree sexual assault by physical force and fourth-degree criminal sexual contact by physical force/coercion. The judge merged the criminal sexual contact count into the sexual assault count and granted the State's motion to sentence defendant to an extended term, as a persistent offender.

The judge found aggravating factors three (risk of re-offense); six (extent of prior record); and nine (need to deter) applied. N.J.S.A. 2C:44-1(a)(3), (6), (9). The judge noted defendant's work history was a mitigating factor but declined to find that incarceration would cause an excessive hardship on defendant's son. N.J.S.A. 2C:44-1(b)(11). The judge concluded that the aggravating factors substantially outweighed the one mitigating factor. As we have already noted, the judge imposed a twenty-year NERA term,[6] parole supervision for life, and Megan's Law registration. This appeal followed.

Defendant raises these points for our consideration:

---

[6] The judgment of conviction incorrectly stated defendant was subject to a five-year period of mandatory parole supervision under NERA. See N.J.S.A. 2C:43-7.2(c) (requiring imposition of a three-year term of parole supervision for conviction of a second-degree crime). The judgment of conviction was subsequently amended to reflect a three-year period of mandatory parole supervision.

I. DEFENDANT WAS DENIED A FAIR TRIAL BY THE STATE'S DISCOVERY VIOLATION AND THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL.

II. DEFENDANT WAS DENIED A FAIR TRIAL WHEN A POLICE OFFICER TESTIFIED THAT THE PERSONNEL WHO PERFORMED A SEXUAL ASSAULT EXAMINATION OF THE ALLEGED VICTIM HAD CONCLUDED THAT SHE "WAS THE VICTIM OF A SEXUAL ASSAULT".

III. THE TRIAL COURT ERRONEOUSLY ADMITTED MS. DE LA CRUZ'S TESTIMONY OF WHAT HAD ALLEGEDLY OCCURRED IN HER ENCOUNTER WITH DEFENDANT AS STATEMENTS IN AID OF MEDICAL DIAGNOSIS PURSUANT TO EVIDENCE RULE 803(c)(4).

IV. THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT THEY COULD NOT INFER THAT DEFENDANT WAS MORE LIKELY TO COMMIT CRIMES BECAUSE OF DEFENDANT'S TESTIMONY THAT HE HAD BEEN DEALING DRUGS AT THE TIME OF THE INCIDENT.

V. CUMULATIVE ERROR DEPRIVED DEFENDANT OF A FAIR TRIAL AND REQUIRES THAT DEFENDANT'S CONVICTION AND SENTENCE BE REVERSED.

VI. DEFENDANT'S SENTNCE TO AN EXTENDED TERM OF TWENTY YEARS IN STATE PRISON SUBJECT TO NERA FOR HIS CONVICTION FOR SECOND DEGREE SEXUAL ASSAULT IS EXCESSIVE AND INCONSISTENT WITH THE SENTENCE IMPOSED ON DEFENDANT AFTER

HIS FIRST TRIAL AT WHICH HE WAS CONVICTED OF FIRST-DEGREE SEXUAL ASSAULT AND SENTENCED TO AN EXTENDED TERM OF THIRTY-FIVE YEARS.

## II.

"Traditional rules of appellate review require substantial deference to a trial court's evidentiary rulings." State v. Morton, 155 N.J. 383, 453 (1998). We uphold the trial court's rulings "absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment." State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "An appellate court applying this standard should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting State v. Marrero, 148 N.J. 469, 484 (1997) (internal quotations omitted)). If an abuse of discretion is found, "we must then determine whether any error found is harmless or requires reversal." State v. Prall, 231 N.J. 567, 581 (2018). However, appellate review of a trial court's legal conclusions is plenary. State v. Handy, 206 N.J. 39, 45 (2011).

"Whether an event at trial justifies a mistrial is a decision 'entrusted to the sound discretion of the trial court.'" State v. Smith, 224 N.J. 36, 47 (2016) (quoting State v. Harvey, 151 N.J. 117, 205 (1997)). We "will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results

12

in a manifest injustice." State v. Jackson, 211 N.J. 394, 407 (2012) (quoting Harvey, 151 N.J. at 205). When deciding whether to grant a motion for a mistrial, a trial court considers the "unique circumstances of the case." Smith, 224 N.J. at 47. Where an appropriate alternative exists, such as "a curative instruction, a short adjournment or continuance, or some other remedy," a mistrial may not be necessary. Ibid. "A court's failure to take appropriate action to remedy a discovery violation can implicate the defendant's right to a fair trial." Id. at 48 (quoting State v. Clark, 347 N.J. Super. 497, 507, 510 (App. Div. 2002)).

A. IMPEACHING DEFENDANT'S TESTIMONY WITH A MOTOR VEHICLE ABSTRACT NOT PROVIDED IN DISCOVERY

Defendant contends the prosecutor withheld defendant's motor vehicle abstract in "bad faith" during discovery and the court abused its discretion by denying his motion for a mistrial. During direct-examination, defendant denied abducting P.R. and placing her in a car. On cross-examination, the following colloquy took place:

> Q. [Y]ou didn't own a car on May 20, 2011?
> A. No.
> Q. But, you had a driver's license; didn't you?
> A. No.
> Q. But, you did drive a car; didn't you?
> A. No.
> Q. So, you're telling us that you've never driven a car?

A. Nope.
Q. Okay. So, let me ask you about this. July 21, 2011.
Did you get pulled over in the City of Passaic?
A. Yes.
Q. You were driving a car, weren't you?
A. I was.

. . . .

Q. Okay. But, on July 21, 2011, you were driving a car
in the City of Passaic; right?
A. Yes.
Q. And you were stopped by the police, while you were
driving a car; right?
A. Yeah.

At this point defense counsel objected and the jury was excused. The prosecutor explained that she was impeaching defendant with his motor vehicle abstract that demonstrated he was issued a summons for driving with a suspended license on July 21, 2011. Defense counsel argued that it was a discovery violation, stating: "I don't have this information. This was not given to me. I never had that for the first trial." The document indicated it was faxed to the prosecutor that morning, June 4, 2018, at 9:35 a.m. Defense counsel argued the prosecutor did not advise that she had received the abstract and used it by surprise. The prosecutor responded that she did not deliberately fail to provide it and was not trying to mislead anyone. Rather, she told the court that

she believed the abstract was given to defense counsel during defendant's prior trial.

Defense counsel moved for a mistrial "because the jury has already heard it. There's nothing that can unring that bell." The court then excused the jury for the day. Ultimately, the court could not determine whether the motor vehicle abstract had been provided to defense counsel during discovery. The court stated it would provide a curative instruction following defense counsel's redirect.

Defendant was called back to the stand. Following redirect regarding his driving on July 21, 2011, the court issued the following curative instruction:

> [Y]ou heard brief testimony from the defendant on cross examination in response to the Prosecutor's question that the defendant was stopped while driving in Passaic some months after May 20, 2011. The defendant had testified that he was not driving at the time of the alleged offenses, on May 20, 2011.
>
> Now, I'm first going to indicate to you that this stop was for a minor motor vehicle offense, and the charge was later dismissed. I am telling you this so you -- you do not speculate that it was any more serious than that. Now, having said this, I'm going to strike this testimony from the record, since it has no relevance in the case, which alleges an offense on May 20, 2011, months earlier.
>
> You are not to consider, in your thoughts or discussions, any reference to this testimony, it cannot

15

play any part in your verdicts. So, any testimony surrounding this topic is not to be considered by you, in any way.

The court issued a thorough curative instruction by striking that portion of testimony and informing the members of the jury that they must not consider it at all. It is presumed the jurors followed these instructions. State v. Loftin, 146 N.J. 295, 390 (1996) (citing State v. Manley, 54 N.J. 259, 271 (1969)). "The presumption is '[o]ne of the foundations of our jury system.'" State v. Herbert, 457 N.J. Super. 490, 504 (App. Div. 2019) (quoting State v. Burns, 192 N.J. 312, 335 (2007)).

Further, prior to the trial court issuing the curative instruction, defendant was able to explain to the jury why the summons was not relevant on redirect. We conclude the denial of defendant's motion for a mistrial was not an abuse of discretion.

B. HEARSAY TESTIMONY RELATING TO CONCLUSIONS THAT P.R. WAS THE VICTIM OF A SEXUAL ASSAULT

Valentin testified that De La Cruz and the sexual assault advocate concluded that P.R. "was a victim of sexual assault." Immediately after Valentin made this statement the court instructed the jury:

> [O]bviously it is up to you hearing all the evidence to determine your assessment of the facts. The detective, and you evaluate his testimony, is indicating that that

16

was said to him. You evaluate that too. But whether the person was a victim or not is entirely for you to decide.

In response, defense counsel requested an instruction that the SAFE "just collects samples and articles" without opining "whether or not someone is a victim of a sexual assault." The court then instructed the jury that

it is entirely up to you to determine what occurred in this case. I agree that the person who does the medical evaluation does a medical evaluation. But what occurred prior to that, or didn't occur prior to that is entirely up to you.

Defense counsel moved for a mistrial, contending the "[j]ury will be thinking that someone has made a diagnosis that there was a sexual assault in this case." The court denied the motion and stated it could "either strike the comment, or [it could] again instruct [the jury] that the nurse is indicating what the alleged victim told her." Defense counsel opted for a curative instruction; the court provided the following:

It may have appeared from what the detective said that the nurse examiner was expressing an opinion that a sexual assault occurred. That is not the case. The sex -- it is agreed that the nurse examiner was called to the hospital based upon an allegation of sexual assault, and was there to perform an appropriate medical evaluation, such as observing if there are any physical injuries, and taking appropriate physical specimens from the alleged victim. She was not expressing an opinion, nor can she express an opinion. And there's no question she had no

17

personal knowledge of what had allegedly occurred earlier. . . . It was not an expression of an opinion.

Later on, however, the court qualified De La Cruz as an expert in the field of physician assistant/forensic sexual assault examination and issued a standard instruction that she "may give her opinion as to any matter in which she is versed which is material to the case."

Defendant argues that the curative instruction was inadequate and inconsistent with the court's later instruction that admitted De La Cruz as an expert who could testify as to her opinions. He contends the denial of his motion for a mistrial was error. We disagree.

"Evidence that bears directly on the ultimate issue before the jury may be less suitable to curative or limiting instructions than evidence that is indirect and that requires additional logical linkages." Herbert, 457 N.J. Super. at 505. "'[P]olice testimony essentially vouching for' the [State's] version of events" is particularly problematic. State v. Sui Kam Tung, 460 N.J. Super. 75, 102 (App. Div. 2019) (quoting State v. Frisby, 174 N.J. 583, 595 (2002)).

The following factors should be considered when determining the adequacy of a curative instruction: (1) "the nature of the inadmissible evidence the jury heard, and its prejudicial effect"; (2) "an instruction's timing and

substance affect its likelihood of success"; and (3) a court's "tolerance for the risk of imperfect compliance." Herbert, 457 N.J. Super. at 505-08.

Here, Valentin, a law enforcement officer, informed the jury that De La Cruz concluded P.R. was sexually assaulted. The trial court promptly instructed the jury that "whether the person was a victim or not is entirely for you to decide." The court reiterated this point by further instructing the jury that "it is entirely up to you to determine what occurred in this case." The court also instructed the jury that "there's no question [De La Cruz] had no personal knowledge of what had allegedly occurred earlier."

The jury had the benefit of being instructed three times that it was not to consider Valentin's comment. The instructions were sufficiently timely and substantively adequate. Again, we presume that the jury abided by these instructions and conclude that the risk of jury non-compliance was minimal. We are therefore satisfied that Valentin's testimony did not result in a manifest denial of justice that deprived defendant of a fair trial. Accordingly, the denial of defendant's motion for a mistrial was not reversible error.

C. HEARSAY TESTIMONY RELATING TO P.R.'S DESCRIPTION OF HER ATTACKER AND HIS CONDUCT

We next address defendant's argument that the trial court erred by admitting De La Cruz's testimony relating to P.R.'s hearsay statements

A-0485-18T4

describing her attacker and what had been done to her as statements "reasonably pertinent to diagnosis or treatment" under N.J.R.E. 803(c)(4). The hearsay statements include P.R. telling De La Cruz that: (1) her assailant had "smacked her in the lips"; (2) she was assaulted by one Hispanic male actor, who was a stranger to her; (3) he grabbed her hair, put his arm around her torso, and threatened to stab her; (4) the actor kissed her and forced her to perform oral sex; and (5) she was afraid the actor was "going to kill her."

The court overruled defendant's objections and stated that De La Cruz's testimony was proper as statements for purposes of medical diagnosis or treatment because "[t]hese are details a medical person has to have." The court also noted the hearsay exception for then existing mental, emotional or physical condition under N.J.R.E. 803(c)(3). The court offered to give a limiting instruction that "the expert is indicating what the alleged victim said to her and how she reacted to it in terms of medical procedures." This instruction was not requested or given.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. N.J.R.E. 801(c). Statements made for the purpose of medical diagnosis or treatment are exceptions to the hearsay rule. N.J.R.E. 803(c)(4).

To be admissible, the statements must "describe medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof to the extent that the statements are reasonably pertinent to diagnosis or treatment." State v. Pillar, 359 N.J. Super. 249, 289 (App. Div. 2003) (quoting N.J.R.E. 803(c)(4)). However, "ordinarily statements made as to the cause of the symptoms or conditions" are not admissible because they are not relevant to the patient's treatment. Cestero v. Ferrara, 57 N.J. 497, 501 (1971).

In Pillar, we stated if a doctor's examination "was conducted for evidence gathering purposes," the hearsay statements in the medical history would be inadmissible under N.J.R.E. 803(c)(4). 359 N.J. Super. at 289. It is the State's burden to establish admissibility under this rule. See ibid.

De La Cruz acknowledged that her "job is to collect evidence." However, she also testified that she took P.R.'s medical history in order to guide her medical decision making and collected oral and rectal swabs. Despite our conclusion that the examination performed by De La Cruz was for medical diagnosis and potential treatment, several of P.R.'s statements were improperly admitted under N.J.R.E. 803(c)(4).

A-0485-18T4

De La Cruz's testimony that P.R. had edema, or swelling, around her mouth was admissible.  But P.R.'s statement to De La Cruz that her assailant had "smacked her in the lips" was inadmissible.  N.J.R.E. 803(c)(4) is "limited to descriptions of present condition, and therefore it excludes description of past pain or symptoms, as well as accounts of the events furnishing the cause of the condition."  McCormick on Evidence § 273, at 405 (Mosteller ed., 8th ed. 2020) (footnotes omitted).  De La Cruz should not have been permitted to testify about what P.R. said caused the injury to her mouth.

Regarding P.R.'s statement that she was afraid the actor was "going to kill her," this was admissible under N.J.R.E. 803(c)(3).  This rule provides in relevant part, "[a] statement made in good faith of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health)" is admissible.  N.J.R.E. 803(c)(3).

"[T]he victim's emotional state may permit the inference of some fact of consequence, such as lack of consent where the prosecution charges that the killing occurred during the commission of either a kidnapping or rape."  McCormick on Evidence § 276 at 426-27 (footnote omitted).  However, a limiting instruction should be provided to the jury regarding how to use a

22

victim's statement of fear during its deliberations.  See State v. Scharf, 225 N.J. 547, 581 (2016) ("A limiting instruction is required . . . to guard against the risk that the jury will consider the victim's statements of fear as evidence of the defendant's intent or actions.").  The court did not provide a limiting instruction.

P.R.'s statements that her assailant grabbed her hair, put his arm around her torso, threatened to stab her, kissed her, forced her to perform oral sex, and that he was a Hispanic male, would not be admissible under any hearsay exceptions.  No limiting or curative instruction was provided for these statements.

While these statements may have been inadmissible, we discern no harmful error resulting in a manifest denial of justice.  Defendant did not deny having sexual relations with P.R. but rather maintained that it was consensual.  Moreover, P.R.'s out-of-court statements to De La Cruz about what had occurred were amplified more extensively during her trial testimony and subjected to rigorous cross-examination.  At worst, the admission of this hearsay was merely cumulative evidence.

> D.  P.R.'S COMMENTS REGARDING THE BELIEVABILITY OF HISPANIC PEOPLE AND HER WILLINGNESS TO TAKE A POLYGRAPH

P.R. is Hispanic. When her credibility was attacked by defense counsel during cross-examination, P.R. made an unsolicited statement that "[p]eople don't believe Hispanics." Defense counsel requested a curative instruction. The court promptly issued the following curative instruction:

> You may recall that, when [P.R.] testified, she made a comment or a remark that people don't believe Spanish people or Hispanic people. I'm going to indicate to you that . . . you should not consider that remark during your deliberations. Your deliberations should focus on the evidence. Whether the State has proven beyond a reasonable doubt or not that the defendant committed the offenses. The defendant has pleaded not guilty. But, that remark should not, in any way, affect your deliberations.

P.R. also stated that she was willing to take a polygraph. Once again, the comment was unsolicited. Defense counsel moved for a mistrial, which the court denied. Instead, the court provided the following curative instruction:

> Both attorneys have every right to vigorously conduct direct and cross-examination, so there was nothing inappropriate about the cross-examination. The witness indicated that [she] would take a lie detector test. Now the testimony of this witness, as with any other witness, is entirely up to you to evaluate. We just all agree that lie detector tests are virtually never used and they're not admissible in court, so we just want you to know that. Okay? The credibility, again, of this witness or any other witness is entirely up to you.

These firm and clear curative instructions identified the particular testimony they were meant to address and were provided without undue delay. The instructions effectively remedied the potential prejudice caused by P.R.'s unsolicited comments regarding the believability of Hispanic people and her willingness to take a polygraph. See State v. Vallejo, 198 N.J. 122, 134-37 (2009) (noting that a curative instruction may remedy potential prejudice if it is "firm, clear, and accomplished without delay" and identifies the specific testimony it is meant to address). We discern no error or abuse of discretion by the trial court.

E. FAILURE TO PROVIDE A LIMITING INSTRUCTION UNDER N.J.R.E. 404(b) CONCERNING DEFENDANT'S TESTIMONY THAT HE WAS DEALING DRUGS AT THE TIME OF THE INCIDENT

Defendant argues the trial court committed plain error when it failed to provide, sua sponte, a limiting instruction under N.J.R.E. 404(b) to assist the jury in evaluating his admission that he was a crack cocaine dealer. We disagree.

Defendant did not request such a limiting instruction or otherwise object to the jury charge pursuant to Rule 1:7-2. Therefore, we consider this issue under the plain error standard and disregard any error or omission by the trial court "unless it is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2; see also State v. Hock, 54 N.J. 526, 538 (1969)

(noting the "legal impropriety in the charge" must be "sufficiently grievous . . . to convince the court that of itself the error possessed a clear capacity to bring about an unjust result").

On direct examination, defendant testified P.R. approached him and proposed he give her crack cocaine in exchange for consensual sex. On cross-examination, the following colloquy occurred:

> Q. Sir, you testified on direct that you were selling drugs at 5:00 a.m. on Passaic Street; is that right?
> A. Yes.
> Q. And you said that you were out all night working, selling drugs?
> A. Yes.
> Q. And is this what you did for a living?
> A. Something like that.
> Q. Okay. So, this is the only job you had was selling drugs; right?
> A. Yes.
> Q. And you would sell drugs to whoever came by on Passaic Street?
> A. Yes.
> Q. So, if it was a man or a woman, you'd sell them drugs; right?
> A. Yes.
> Q. If it was a young person or an older person, you'd sell them drugs; right?
> A. Yes.
>
> . . . .
>
> Q. All right. . . . I want to take you back to your testimony on direct. You indicated that on May 20, 2011, you were selling drugs that morning; is that right?

A. Yes.
Q. How long had you been selling drugs that day?
A. Ten, eleven hours.
Q. Okay. So, ten, eleven hours. A long stretch of time; right?
A. Yes.
Q. What kind of drugs were you selling?
A. Crack cocaine.

Despite defendant's lack of request for a limiting instruction, the court instructed the jury that "[y]ou may not conclude that the defendant committed the crimes charged in this case, or is more likely to have committed the crimes charged, simply because [he] has committed a crime on another occasion." This typical anti-propensity charge sufficiently informed the jury that it could not find defendant guilty because he was selling crack cocaine that day.

In addition, defendant does not deny he was a drug dealer but rather claimed this was a "sex-for-drugs" situation. Under this defense strategy, the jury would have to know about his drug dealing anyway.

We discern no plain error that was "clearly capable of producing an unjust result." R. 2:10-2.

F. CUMULATIVE ERROR

Defendant claims that cumulative prejudicial effect of the objectionable testimony and discovery violation deprived him of a fair trial, thus requiring his conviction and sentence to be vacated. We are unpersuaded by this argument.

27

Our Supreme Court has "recognized . . . that even when an individual error or series of errors does not rise to reversible error, when considered in combination, their cumulative effect can cast sufficient doubt on a verdict to require reversal." State v. Jenewicz, 193 N.J. 440, 473 (2008). This argument was not raised below so defendant must show plain error. R. 2:10-2.

We are satisfied that any potential for prejudice was cured by the judge's clear and firm instructions. Vallejo, 198 N.J. at 134-35. The judge promptly addressed the matters raised by defendant, clearly identified the testimony at issue, and firmly communicated to the jury its role in determining credibility, the limited use of certain evidence, and to disregard the stricken evidence. There is nothing in the record to indicate that the jury was unable to follow the judge's curative instructions or jury charges. See State v. Winder, 200 N.J. 231, 256 (2009) ("We presume that the jury followed the instruction accurately." (Citing Manley, 54 N.J. at 271)).

Based on the foregoing analysis of the issues raised by defendant, we find that any cumulative impact does not "cast sufficient doubt on a verdict to require reversal." Jenewicz, 193 N.J. at 473. We are satisfied, therefore, that the trial court did not abuse its discretion in declining to grant a mistrial, as any alleged

errors, in toto, were not "clearly capable of producing an unjust result." R. 2:10-2.

III.

Defendant argues that his sentence was excessive and inconsistent with the sentence imposed after his first trial. He contends his sentence must be vacated and he should be resentenced "to a term not to exceed seventeen and one-half years, one half of the thirty-five[-]year term imposed after the first trial." We disagree.

"[Our] review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). We consider whether the trial court has made findings of fact grounded in "reasonably credible evidence"; whether the factfinder applied "correct legal principles in exercising . . . discretion"; and whether "application of the facts to the law [has resulted in] such a clear error of judgment that it shocks the judicial conscience." State v. Roth, 95 N.J. 334, 363-64 (1984) (citations omitted). We review a trial judge's findings to determine whether the aggravating and mitigating factors are based on competent, credible evidence in the record. Id. at 364.

29

"In sentencing, trial judges are given wide discretion so long as the sentence imposed is within the statutory framework." State v. Dalziel, 182 N.J. 494, 500 (2005). Once the trial court has balanced the aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b), it "may impose a term within the permissible range for the offense." State v. Bieniek, 200 N.J. 601, 608 (2010); see also State v. Case, 220 N.J. 49, 63 (2014).

The judge first noted defendant was twenty-six years old at the time of the sexual assault. She then determined that defendant had been "previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age . . . within 10 years of the date of the crime for which the defendant is being sentenced." N.J.S.A. 2C:44-3(a). Based upon these facts, the court granted the State's motion to sentence defendant to an extended term as a persistent offender.

The court then considered the sentencing range for a second-degree extended term, which is ten to twenty years. N.J.S.A. 2C:43-7(a)(3). The court sentenced defendant to the maximum twenty-year NERA term. Accordingly, defendant is required to serve seventeen years before he is eligible for parole. N.J.S.A. 2C:43-7.2.

Defendant's argument that his sentence is inconsistent with the sentence imposed for first-degree sexual assault after his first trial is without sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(2).

"The general rule is that a sentence may not be increased after retrial following a successful appeal." Cannel, N.J. Criminal Code Annotated, cmt. 7 on N.J.S.A. 2C:1-9 (2019) (citing North Carolina v. Pearce, 395 U.S. 711 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989); State v. Young, 379 N.J. Super. 498, 507 (App. Div. 2005)). Here, however, defendant was convicted on retrial of a different offense. Moreover, defendant's aggregate sentence was not increased.

"[A] defendant who appeals his substantive conviction along with the corresponding sentence has no legitimate expectation of finality in either the underlying conviction or the corresponding sentence." State v. Haliski, 140 N.J. 1, 21 (1995) (citing State v. Rodriguez, 97 N.J. 263 (1984)). Defendant's sentence "did not violate his double jeopardy rights, since [his] only expectation was that his original aggregate sentence would not be increased." Young, 379 N.J. Super. at 508 (citing State v. Espino, 264 N.J. Super. 62, 72 (App. Div. 1993)). Similarly, "[t]he fact that the [aggregate] resentence was not greater than the original sentence also satisfies the legitimate due-process-

vindictiveness concern that flows from defendant's original appeal." <u>Ibid.</u> (citing <u>Espino</u>, 264 N.J. Super. at 73). Put simply, defendant's sentence was not unconstitutional or illegal.

We are also satisfied that the judge appropriately applied the statutory aggravating and mitigating factors and did not abuse her discretion or stray from the governing law. The application of aggravating factors three, six, and nine is fully supported by the record, as is the finding that the aggravating factors substantially outweighed the sole mitigating factor. Defendant was properly classified as a persistent offender based upon his age at the time of the offense and previous convictions. Accordingly, his sentence was within the statutory range. The sentence was not manifestly excessive or unduly punitive. It does not shock our judicial conscience. Accordingly, we discern no abuse of discretion and affirm defendant's sentence.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION